

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00096-CR

_____

MACEO WAITES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Marion County, Texas
Trial Court No. F10734-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Even though an appeal was perfected, an opinion was rendered, and judgment became final in 1993 in this case, the Texas Court of Criminal Appeals has authorized another appeal of this conviction. Based on the superior court's order, we will review the issues raised. Although not precisely enumerated as such, Waites presents four points of error. He claims the trial court should have granted Waites' motion to suppress a written statement made by Waites; that the trial court erred in overruling Waites' objections to the prosecutor's closing arguments at guilt/innocence and later at punishment; and that an incomplete reporter's record entitles him to a new trial. After reviewing Waites' points of error, we affirm his conviction.

## I. FACTS

On September 17, 1991, Ann Brooks walked into her garage and was attacked by a man wielding a large knife or machete. Brooks testified she had known Waites since he was a small child and identified him as her attacker. Waites hit Brooks several times on the top of her head with the knife or machete and took a shoulder bag she was carrying. In the bag was a large amount of cash and checks, jewelry, and a .380 pistol. Earlier that day, before the robbery, witness Joe Luster said he saw Waites, whom Luster knew and identified, walking down a road in the area of the Brooks home carrying a machete.

Also on the day of the robbery, Royce Martin was working on a truck in an area near the Brooks home; with him was Melvin Rand. Martin saw Waites run out of the woods; in one hand,

Waites had "a pretty good sized gun," in the other, a wad of cash. Waites pulled Rand aside, and although Martin could not hear their conversation, he testified he saw Waites hand Rand the cash. Later, Rand asked Martin to count the money; Martin testified he counted $3,000.00. Rand would later turn some of the cash in to authorities; but between him, Martin, and another man, a good deal of the money was spent.

Waites became a suspect when Brooks identified him as the robber; Waites turned himself in to authorities in Dallas about six days after the robbery. While being interviewed by law enforcement, he agreed to accompany them to an area in the woods behind the Brooks home; bank bags with cash and checks were found, as were items of jewelry. At trial, Brooks identified the jewelry as items that had been in the bag taken from her in the robbery. The rings found and later identified by Brooks were found on the bank of a small pond. The day after they were found, authorities had the pond drained. In the drained pond, they found a large knife and a machete. The machete was later identified by Waites' mother as belonging to her.

In Waites' case-in-chief, his mother, Carolyn Jackson, testified that the night before the robbery, she had been driving around with Rand, who took her down a road in the woods and pointed out the road that went to the Brooks house. According to Jackson, Rand said that Brooks "has got a lot of money" and "before the end of the week I'll [Rand] bet you I have me a lot of money." Jackson said she did not think anything of this comment. Later that evening, after returning home, she saw Rand and Waites conversing; Rand was sharpening a machete and she

3

heard him say "this would work." She identified State's Exhibit 6, the machete identified by Brooks as the one with which she had been attacked; Jackson said she owned that machete as well as another. She said State's Exhibit 6 was the machete Rand was sharpening the night before the robbery; and that night Waites was holding the other machete. Jackson testified Rand had threatened to kill her and her children if she testified at Waites' trial.

## II. PROCEDURAL HISTORY

Waites' trial[1] was held in March 1992; the jury found him guilty on March 18, 1992. He was represented at trial by retained counsel, Walter Knowles. Knowles filed a notice of appeal for Waites, but never arranged for a reporter's record[2] or appellate brief to be filed. This Court contacted Knowles and advised him of the requirements that a statement of facts and brief be timely presented to the Court. At this Court's direction, the trial court held a hearing in December 1992 to address why Knowles had not secured a reporter's record or filed a brief; that hearing is detailed later in this opinion. On March 9, 1993, we issued an unpublished opinion, noting that despite our attempts to contact counsel, no statement of facts or brief had been filed by the appellant. *Waites v. State*, cause number 06-92-00090-CR. Citing the Texas Rules of Appellate Procedure in place at that time, we proceeded to review the record before us, which was limited to

---

[1]The trial took three days, including voir dire.

[2]Waites' trial and initial appeal predated the 1997 amendments to the Texas Rules of Appellate Procedure. Formerly, the reporter's record was referred to as the statement of facts and the clerk's record was called the transcript. Those terms were used in our 1993 opinion; we will generally use the terms "reporter's record" and "clerk's record" in this opinion, but on some occasions, the earlier terms are used, especially where witnesses are quoted.

4

the transcript. Finding no error, we affirmed Waites' conviction and sentence. Our mandate issued April 28, 1993.

In December 2008, Waites filed an application for habeas corpus relief, which led to the Texas Court of Criminal Appeals finding that Waites was entitled to an out-of-time appeal. Following Waites' motions and requests, we allowed him to proceed pro se on this out-of-time appeal.

## III. MOTION TO SUPPRESS

Waites first complains of the trial court's denial of Waites' motion to suppress a lengthy written statement given by Waites to law enforcement shortly after Waites turned himself in, about a week after the robbery. Waites claims the statement was not made voluntarily, and therefore the trial court erred in admitting it. However, the statement was not offered into evidence at trial and was not admitted.[3] Where evidence obtained as a result of an interrogation has not been used, the appellate court need not entertain a complaint attacking admissibility of that evidence. *Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997). We overrule Waites' first point of error.

---

[3]It is true that at the conclusion of a hearing held on Waites' motion to suppress the statement, the trial court found the statement was made voluntarily and the court "admit[ted] [the statement] into evidence in this case" and further ruled "it will be admitted before the jury in this case." As stated above, though, the statement was not offered or admitted before the jury; it does not appear in the trial exhibits, and there is no indication it was discussed before the jury or shown to the jury.

5

## IV.  PROSECUTOR'S ARGUMENT

Waites raises two points of error complaining of statements made by the prosecutor in closing arguments, one in rebuttal of Waites' closing argument at guilt/innocence, and another in the prosecutor's closing argument at punishment.

### A.  Guilt/Innocence Rebuttal Closing

Waites complains of the following statements made by the prosecutor in his rebuttal to Waites' closing argument at the guilt/innocence phase of trial:

> The first thing, I don't get angry very often.   But I'm angry in this case.   I'm angry that somebody would come here into this county, and not knowing the law enforcement officers that we have, and not knowing Walter Thomas, and not knowing Howard Dunham, and not knowing some of the other type of people that we have in this community here, the type of people that they are, and get up here and tell you that these two men, along with any others, would deliberately lie and deliberately set up a scheme –

At this point, Waites' counsel objected to "improper argument," which objection was overruled.[4]

To preserve an issue for appeal, a timely objection must be made that states the specific ground for the objection, if the specific ground is not apparent from the context.  *See* TEX. R. APP. P. 33.1; *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006).  A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for the objection is obvious to the court and to opposing counsel.  *Buchanan*, 207 S.W.3d at 775.

---

[4]In his brief, Waites points to the next part of the State's argument, where he said Waites' argument that law enforcement "went out there and put this stuff out here, and put it in the woods, and then brought [Waites] to it" angered the prosecutor.   Because Waites lodged no complaint to these comments, we will not consider them as part of Waites' appellate complaint.

Ordinarily, an objection to "improper argument" is too general to preserve error. *Miles v. State*, No. 01-09-00201-CR; 2010 Tex. App. LEXIS 110, at *3 (Tex. App.—Houston [1st Dist.] Jan. 7, 2010, pet. filed) (citing *Hougham v. State*, 659 S.W.2d 410, 414 (Tex. Crim. App. 1983) (holding appellant's objection "[w]e will object to this line of argument" too general to apprise trial court of ground for his objection regarding complaint about prosecutor's jury argument)).

Notwithstanding Waites' failure to make a specific objection, we note that the State's argument was a permissible response to Waites' closing argument. Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999); *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995).

The State's argument was in rebuttal to Waites' closing argument. In his closing summation, Waites' attorney argued to the jury that two of the State's witnesses, Rand and Martin, were utterly unbelievable. He also suggested that law enforcement agents had already found the stolen items in the woods and took Waites to those items, rather than Waites having led officers to the stolen booty and the weapons found in the pond. We contrast this situation with that in *Brown v. State*, 270 S.W.3d 564, 570–72 (Tex. Crim. App. 2008), where the defense argued State's witnesses presented false testimony and then insinuated such testimony was at the behest of the

7

prosecutor. In his closing rebuttal, the *Brown* prosecutor in turn accused defense counsel of lying. The Texas Court of Criminal Appeals found that the prosecutor strayed from the permissible areas of referring to facts in the record or addressing statements of counsel; rather, he "gave his own opinion directly impugning the veracity of opposing counsel instead of disproving her allegations with testimony from the trial or simply pointing out that [defense counsel's] insinuations were nothing more than her own unsupported speculation and conjecture." *Id.* at 572.

In the instant case, though, the prosecutor said it made him "angry" that local law enforcement was being accused of lying and manipulating evidence, or "set[ting] up a scheme." It is true the prosecutor referred to Waites' attorney, who according to the record was from Dallas. Waites interprets the prosecutor's statement that "somebody would come here into this county, and not knowing the law enforcement officers that we have" as striking at Waites over his counsel's shoulders. A prosecutor risks improperly "striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The State's comment in this case did not impermissibly strike at Waites over the shoulder of counsel; the prosecutor was clearly responding to the defense's closing argument. We overrule this point of error.

**B.** **Prosecutor Comment in Closing Argument, Punishment**

Waites also complains of the following comment made by the prosecutor during closing argument at the punishment stage:

> Living in this community, you have a right to expect better conduct from your friends and neighbors than Maceo Waites -- .

Waites' counsel objected to "the community's expectations," and the trial court overruled the objection.

Waites claims that argument which refers to the expectations or demands of the community for a particular result is error and correctly cites *Wilson v. State*, 581 S.W.2d 661, 666 (Tex. Crim. App. [Panel Op.] 1979), to that end. However, in *Wilson*, the Texas Court of Criminal Appeals held that the State's argument[5] did not "set forth what result the community demands or expects in this case." *Id.* The State may make a proper plea for law enforcement, including arguing the relationship between the jury's verdict and the deterrence of crime in general, arguing that juries should deter specific crimes by their verdicts, and arguing the impact of the jury's verdict on the community. *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990). However, the State is not permitted to argue that the community or any particular group in the community demands or expects a verdict of guilt or a specific punishment. *Id.* at 56. This type of improper argument urges the jury to lend its ear to the community, rather than to be the voice of the

---

[5]"Is that what our probation laws were meant for? That a person who would rape a child, would come down here–forcibly rape, where her vagina is lacerated and get probation? Surely that's not the case. I mean, it can't be. It can't be as long as I stand here in front of people like yourselves. It just can't be the case. I'm sure that I don't live in a community where people feel like that either." *Wilson*, 581 S.W.2d at 666.

community—which constitutes a proper plea for law enforcement. *Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984). However, not every reference to victims or the community constitutes an improper appeal to community expectations. The State may argue as a plea for law enforcement the impact of a jury's verdict on the community or on a particular segment of the community. *See Borjan*, 787 S.W.2d at 55–56.

Here, the State's argument was a permissible plea for law enforcement. Immediately before the complained-of argument, the State had discussed the rights of the victim and her husband and evidence admitted of Waites' earlier conviction for aggravated assault. The prosecutor asked the jury "[t]o think about some other people's" rights; he said it was time to "let the punishment fit the crime." In the context of the State's argument, the statement of which Waites complains was a proper plea for law enforcement. We overrule Waites' third point of error.

## V.   MISSING SECTION OF REPORTER'S RECORD

Waites raises a fourth point of error (although not explicitly noted as his fourth point of error, we treat Waites' complaint as such) complaining that because part of the court reporter's record is missing, he is entitled to a new trial. Before addressing that point, we find it necessary to further chronicle the unusual if not irregular procedural history of this case which has culminated with the instant appeal, ordered by the Texas Court of Criminal Appeals.

10

## A.    1992 Post-Conviction

As mentioned earlier, Waites was represented at trial by retained counsel, Knowles. Following Waites' conviction, Knowles filed a motion for new trial and notice of appeal. The notice of appeal was filed June 12, 1992. When no reporter's record was filed, we ordered the trial court to hold a hearing on the matter.

The trial court held a hearing on December 18, 1992. Knowles and Waites participated via telephone, although none of Waites' replies could be heard by the court reporter and therefore were not transcribed. Knowles said that he had spoken to Waites' mother, advising her of the cost of a reporter's record; she could not afford that record. Knowles said he had only been paid $2,000.00 of the $7,500.00 he was supposed to have received for representing Waites at trial. Knowles went on to say,

> And I also informed [Waites] that if the [trial] Court would appoint me to represent him, that I would -- secure the Statement of Facts, then that would be the only fee that I would request, if they paid for the Statement of Facts, then I would proceed on with the appeal on his behalf. And also that in all likelihood that an appeal would be a frivolous appeal to a certain extent because there was [sic] very few errors that were made during the trial itself. . . . . And [Waites' mother] knows the circumstances, and she doesn't have the money to pay for the Statement of Facts. That was the only fee, I did not ask for a fee, just that she pay for the Statement of Fact [sic].[6]

---

[6]Later in the hearing, the trial court appointed Knowles to represent Waites on appeal. But the issue of the reporter's record, or statement of facts, being provided for Waites is never addressed. An indigent appellant is entitled to appointed counsel and a record of the trial proceedings. This was the law in the 1990s after Waites' conviction as well as today. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp. 2009); *Newman v. State*, 937 S.W.2d 1 (Tex. Crim. App. 1996); former TEX. R. APP. P. 53(j)(2).

Later in the hearing, Knowles says that he had discussed with Waites pursuing an appeal only based upon the clerk's record ("transcript") and that Waites agreed to pursue that strategy. The trial court asked Waites if this was correct; the reporter's record states the court reporter could not hear Waites' reply. The trial court then asked Knowles for his "professional opinion" if Knowles felt "comfortable appealing this case with the transcript only?" Knowles again voiced his opinion that "there was not an abundance of errors that were committed during the trial" and Waites'

> only recourse . . . is an appeal of the case on the transcript itself, and I wouldn't have any problems in appealing the trial because I know the facts . . . from our pre-trial investigation or pre-trial motions as well as the trial itself . . . there were very few as far as reversible error[s] as far as the Statement of Facts would disclose, and I would have no problem with appealing the case on the transcript itself.

At that point, the trial court clearly and specifically appointed Knowles as appellate counsel for Waites. At the conclusion of the hearing, the trial court summarized the testimony as follows: Waites indicated he wanted to appeal, had confidence in Knowles' representation, and agreed to pursue his appeal based only on the clerk's record if that was what Knowles wanted to do. Curiously, though, even though he had just appointed Knowles to be Waites' appellate counsel, the trial court said he would "follow the recommendation of Mr. Knowles, the attorney for the Defendant, Maceo Waites, and will not order a Statement of Facts to be furnished at this time, pending the further direction of the Court of Appeals on this matter." We also take note of the last thing said by the trial court, that Waites had told the trial court that he "did want to appeal his conviction, that he had confidence in his attorney, and he basically, if Mr. Knowles wanted to

12

appeal on the transcript only, that was fine with him, and that he had no money with which to pay for the Statement of Facts."

Despite being appointed by the trial court to represent Waites on appeal, Knowles never filed an appellate brief with this Court. We issued an opinion stating we had reviewed the clerk's record and found no error. *Waites v. State*, No. 06-92-090-CR (Tex. App.—Texarkana Mar. 9, 1993, no pet.) (not designated for publication). Our mandate issued April 28, 1993.

More than fifteen years later, Waites filed an application for writ of habeas corpus in the Texas Court of Criminal Appeals, which eventually led to the instant out-of-time appeal. Incident to the application for habeas relief, and before the out-of-time appeal was ordered, Waites filed in the trial court a motion for production of certain records. We point out that in this motion, Waites did not request a reporter's record of the trial.

**B.      Rule 34.6**

Waites cites Rule 34.6(f) of the Texas Rules of Appellate Procedure and argues he is entitled to a new trial. That rule states:

An appellant is entitled to a new trial under the following circumstances:

(1)      if the appellant has timely requested a reporter's record;
(2)      if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed . . . . ;
(3)      if the lost [or] destroyed . . . portion of the reporter's record . . . is necessary to the appeal's resolution; and
(4)      if the lost [or] destroyed . . . portion of the reporter's record cannot be replaced by agreement of the parties . . . .

13

TEX. R. APP. P. 34.6(f).

In his final point of error, Waites complains that the reporter's record is incomplete. Some testimony from State's witness Rand, and all of the testimony from State's witness Dr. Patricia Sanders, could not be transcribed in the reporter's record. From our review, it appears the following occurred with regard to these two witnesses: the State called Rand to testify. Rand described the events summarized above: Rand was with Martin, who was repairing a truck; Waites came out of the woods, with a pistol and a large wad of cash; Waites gave the money to Rand and told him to give it to Waites' mother. Rand testified that Waites gave him the money with the instructions, "give this money to mamma, and tell her I didn't leave her out." Rand denied being part of the robbery. At about this point, the reporter's record states that a recess was taken and another court reporter recorded the next part of the trial. It appears, and the parties here seem to agree, that any further examination of Rand, including cross-examination, and the entire testimony of Sanders, was recorded by this substitute court reporter. Sixteen years later, in the instant proceedings, neither that substitute court reporter nor her notes or recordings can be located.

### C. Record Request Was Timely

We find Waites' request for a reporter's record is timely. On December 1, 2008, when Waites filed his application for habeas corpus relief with the Texas Court of Criminal Appeals, he also filed in the trial court a motion for production of records, requesting the "Clerk of Marion

14

County, Texas . . . produce the record/transcript of the Hearings which were held pursuant to the order(s) of the Court of Appeals." That request would not qualify as a request for the reporter's record. Waites did not formally request the reporter's record of the trial until May 8, 2009, shortly after the Texas Court of Criminal Appeals issued its order for this out-of-time appeal.[7] The Texas Court of Criminal Appeals' order of May 6, 2009, decreed that the appellate timetables for Waites' out-of-time appeal would begin to run from the date of that court's mandate, which issued June 4, 2009. Therefore, his request for a reporter's record was timely. *See Banks v. State*, Nos. 05-05-01050-CR–05-05-01056-CR, 2008 WL 5179898 (Tex. App.—Dallas Dec. 11, 2008, pets. ref'd [2 pets.]) (where appellant granted out-of-time appeal by Texas Court of Criminal Appeals, appellate timetables reset to begin at date of Texas Court of Criminal Appeals' mandate; record request timely for purposes of Rule 34.6(f)) .

### D.    Incomplete Record Due to Waites' Lack of Diligence

To qualify for relief under Rule 34.6(f), an appellant must next demonstrate that "without the appellant's fault, a significant exhibit or a portion of the court reporter's notes and records has been lost or destroyed . . . ." TEX. R. APP. P. 34.6(f)(2). Under the circumstances of this case, we find that Waites failed to exercise diligence to secure a full reporter's record, and accordingly, he is not without fault.

---

[7]All of which is moot, though; at the hearing ordered by the Texas Court of Criminal Appeals in March 2009, the prosecutor told the trial court he had spoken with the court reporter, who felt sure she had destroyed the record as more than fifteen years had passed. In April 2009, though, the reporter came across records in a storage building and set out to generate the reporter's record.

15

As summarized above, Waites agreed post-trial to pursue an appeal based only on the clerk's record. He did nothing for more than fifteen years to secure a full reporter's record of his trial. As discussed in the preceding section, no request for a reporter's record of the trial was made until May 8, 2009, by Waites' appointed counsel—counsel whom Waites later insisted on discharging so that he could proceed pro se on this instant appeal. As detailed above, the reporter's record was fortuitously discovered by the court reporter, albeit missing part of Rand's testimony and the testimony of Sanders.

A defendant is not entitled to a reporter's record as a matter of right. Instead, at every stage of trial, a defendant must exercise some diligence to ensure that a record of any error will be available in the event that an appeal is necessary. *Alvear v. State*, 25 S.W.3d 241, 244 (Tex. App.—San Antonio 2000, no pet.) (citing *Piotrowski v. Minns*, 873 S.W.2d 368, 370 (Tex. 1993)). Not only did Waites acquiesce to proceeding on appeal without a reporter's record, he has produced nothing to show he sought, over the intervening fifteen years, to secure a record. There is no indication he requested the court reporter to retain the notes from trial. *See* TEX. GOV'T CODE ANN. § 52.046(a)(4) (Vernon 2005) (on request of party, court reporter must keep notes from trial for three years; statute in effect at time of Waites' trial was same as in effect as of this writing). Further, even if Waites were to assert that he had not appealed his conviction (an assertion he does not make and which we entertain only for argument's sake[8]), the notes are only to

---

[8]The Texas Court of Criminal Appeals' order, which allowed Waites' out-of-time appeal, did not mention our opinion of March 1993; it is not clear if that court was under the impression no appellate review had ever occurred. That order

16

be retained for fifteen years. TEX. R. APP. P. 13.6 (where no appeal taken, in applicable circumstances, reporter to file trial notes with clerk of court, who only must retain notes for fifteen years; former Rule 11, applicable at the time of Waites' trial, likewise required keeping the trial notes for fifteen years where no appeal was taken and other conditions met. *See* former TEX. R. APP. P. 11(d)).

In *Corley v. State*, 782 S.W.2d 859 (Tex. Crim. App. 1989), the State filed a motion to revoke Corley's probation ten years after he entered his plea. *Id.* at 859–60. Corley's probation was revoked, and he appealed. *Id*. at 860. His sole issue on appeal revolved around whether he was entitled to a transcription of the original plea hearing, but the transcript had been destroyed. *Id*. The appellate court held that Corley was entitled to a statement of facts, and because it had been destroyed through no fault of his own, Corley was entitled to a new trial. *Id*. The Texas Court of Criminal Appeals reversed, however, declining to read Rule 50(e) of the Texas Rules of Appellate Procedure (now Rule 34.6(f)) so broadly as to allow Corley a new trial. *Id.* at 861. The court held that "an attempt by appellant to designate the statement of facts from the original plea hearing to be a part of the record on appeal . . . is untimely when made after the court reporter has properly destroyed her notes." *Id*.[9]

---

"returned (Waites) to that time at which he may give a written notice of appeal so that he may then, with the aid of counsel, obtain a meaningful appeal." Thus, even if the Texas Court of Criminal Appeals was aware of our March 1993 opinion and deemed that appeal not "meaningful," it could be said Waites had not appealed and thereby fall under the purview of Rule 13.6 of the Texas Rules of Appellate Procedure. Even in that situation, though, the time for the reporter's record to have been preserved has passed.

[9]We acknowledge there is no evidence here the missing record has been "properly destroyed." All that is present in this case is that the primary reporter assumed the record had been destroyed, as fifteen years since the conviction had

17

In *Alvear*, Alvear claimed his conviction for felony DWI was not properly supported by prior DWI[10] convictions, because one of those prior convictions, from 1984, involved an involuntary plea by Alvear. 25 S.W.3d at 244. Finding no indication Alvear had done anything in the intervening fifteen years to secure the reporter's record, the San Antonio court of appeals found Alvear's request for the record untimely, and therefore, he did not qualify for relief under Rule 34.6(f). *Id.* at 245.

As we noted above, we feel constrained to find Waites' request for the record was timely, due to the Texas Court of Criminal Appeals' order that the appellate timetables should be reset to begin with the date of that court's mandate. However, we find the comparison to *Corley* and *Alvear* useful.

First, in *Corley*, the Texas Court of Criminal Appeals pointed out that under the circumstances of that case, if Corley were granted a new trial as he sought, that result would conflict with Section 52.046 of the Texas Government Code and have the result that each time a defendant's community supervision is revoked after a three-year period, the defendant would automatically be entitled to a new trial even though the court reporter's notes have been properly destroyed. *Corley*, 782 S.W.2d at 861. Waites has presented a similar situation. The time for

---

passed; the record was only discovered fortuitously, and the primary reporter could not locate the substitute reporter who recorded the missing sections. However, as we have pointed out, the records would have been properly destroyed by the time Waites requested them, under either the Texas Government Code or the Texas Rules of Appellate Procedure.

[10]*See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), § 49.09 (Vernon Supp. 2009).

the reporter to have either kept the trial records or stored them with the trial court clerk has long since passed, and the fault for this delay must be borne by Waites.

We also take note of the appellate court holding in *Alvear*, which pointed out there was no indication Alvear had done anything in the intervening fifteen years to preserve the reporter's record. Both *Corley* and *Alvear* found the respective appellants' request for records untimely. Arguably, as we have said earlier, Waites' request was timely because the Texas Court of Criminal Appeals reset the appellate timetables. Nevertheless, we find Waites to be at fault because he did nothing for over more than fifteen years—from April 28, 1993, the date of the mandate of this Court's opinion, until December 1, 2008, when he first applied for habeas relief to the Texas Court of Criminal Appeals. Like Alvear, Waites did nothing for more than fifteen years to secure a reporter's record. In December 1992, he told the trial court he concurred in his counsel's decision to pursue an appeal without a statement of facts/reporter's record.[11] And finally, similar to the reasoning in *Corley*, were we to grant relief to Waites now, we would tacitly be encouraging defendants who had not appealed to "wait out the clock," that is, wait for the requirements of either Section 52.046 of the Texas Government Code or Rule 13.6 of the Texas Rules of Appellate

---

[11]We are not unmindful of the incongruities found in the actions of Waites' trial attorney. The attorney was appointed by the trial court to represent Waites on appeal, but still seemed to act as if Waites was responsible for paying for the reporter's record. We do not understand why the trial court did not simply order a record produced, unless he was relying on Waites' statement at the December 1992 hearing that he was satisfied in basing his appeal on the clerk's record alone. None of this explains why counsel still did not file an appellate brief despite this Court's admonishments in 1992. However, while Waites did present a claim of ineffective assistance of counsel in his habeas application to the Texas Court of Criminal Appeals, he has made no such claim in the instant appeal.

Procedure to expire, then claim the right to a new trial. This would amount to an abuse of the judicial system.

We find that Waites must bear responsibility for the missing section of the reporter's record, and he has not established himself entitled to relief under Rule 34.6(f). We overrule his final point of error and affirm the conviction.

Jack Carter<br/>Justice

Date Submitted:     May 12, 2010
Date Decided:      June 18, 2010

Do Not Publish