

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0665-23 & PD-0666-23

### THE STATE OF TEXAS

#### v.

### SEDRICK JOHNSON, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## DALLAS COUNTY

KELLER, P.J., delivered the opinion of the Court in which HERVEY, YEARY, KEEL, SLAUGHTER and MCCLURE, JJ., joined. RICHARDSON and NEWELL, JJ., concurred. WALKER, J., dissented.

After his arrest on outstanding warrants, but hours before custodial interrogation or *Miranda* warnings, Appellee told the police, "I need to talk to a lawyer." The police later gave him *Miranda* warnings, obtained a waiver of rights, and questioned him about the current offense. The question before us today is whether the request for counsel before *Miranda* warnings invoked *Miranda* protections so as to bar police-initiated interrogation after *Miranda* warnings were later given.[1] In

---

[1] The State's first issue asks:

line with precedent from the United States Supreme Court, we answer that question "no." The right

to counsel under *Miranda* cannot be invoked anticipatorily. The police were allowed to seek to

question Appellee after giving him *Miranda* warnings for the first time.[2]

## I. BACKGROUND

### A. The Investigation

An eighteen-month-old boy (Junior) lived with Appellee and his girlfriend, who was the

child's guardian.[3] Junior was reported missing early one morning. Multiple divisions within the

Dallas Police Department, involving hundreds of people, began to search for him. Appellee went

to the police station to help. Detective Angela Hernandez was assigned to gather background

information about people close to Junior, and Appellee was one of those people. He was taken to

an interview room, and at 2:30 p.m. he was interviewed by Detective Carrington. Starting at 5:57

---

May a reviewing court rely exclusively on the "custodial interrogation environment" rather than assess whether a defendant was subjected to interrogation regarding the invocation of the right to interrogation counsel and, if so, may a defendant prospectively invoke their right to interrogation counsel before being subjected to questioning?

[2] We also granted review of a question addressing whether the "I need a lawyer" statement was an unambiguous request for counsel prior to interrogation. The State's second issue asked:

May a reviewing court supplant the objective test reviewing the totality of the circumstances surrounding a defendant's statement to determine whether it unambiguously invoked the right to interrogation counsel with a subjective test based on the testimony of a witness?

In light of our holding, we do not reach that question.

[3] We view the facts in the light most favorable to the trial court's ruling, giving almost total deference to the trial court's findings of fact. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019). That deferential review includes a review of electronic recordings, but that deferential review does not bind us to fact findings that an electronic recording shows are not supported by the record. *Tucker v. State*, 369 S.W.3d 179, 184-85 (Tex. Crim. App. 2012).

p.m., Detective Hernandez conducted a second interview with Appellee. After the interview, Detective Hernandez left the room to talk to other detectives and was gone for some time. At 7:18 p.m., Appellee left the room to inquire about his children.

At around 7:35 p.m., Appellee returned to the hallway outside the interview room. He asked where his children were, and Sergeant Herrera responded that they were being questioned at the Dallas Advocacy Center regarding a criminal offense. Appellee asked what the offense was, and the officer responded that it was kidnapping. The officer explained that the children were witnesses to the boy going missing, so police were questioning them. Appellee replied that the children had nothing to do with it. The officer emphasized that the children were there and saw what happened. Appellee then asked, "Who says they were there?" The officer responded, "They did." At about the same time, Appellee was placed in handcuffs. Appellee then said, "Okay. I need to talk to a lawyer." Sergeant Herrera responded, "Okay, but you still need to sit in that room." After talking about the children being at the advocacy center and whether his grandmother was there, Appellee said, "I don't mind talking to nobody as long as I know my kids are alright." Appellee was told that he was being arrested for out-of-county warrants. He asked to call his grandmother, but the officer did not permit him to do so at that time.

No lawyer was ever called. Inside the interview room, Appellee again asked about the whereabouts and condition of his children. Sergeant Herrera informed Appellee that his children were safe at the Dallas Advocacy Center. Appellee remained in the interview room for six hours. During that time, he called out to officers for some water and for help in getting up from the floor and loosening his handcuffs. He also asked about his warrants, whether he was going to be transported somewhere, and what was going on with his children and his girlfriend. Officers told

him that people were still being interviewed, they might need to interview him again, and they would try to get an update for him.

At about 1:20 a.m. the next morning, Detective Rico Harris entered the interview room to speak with Appellee. Detective Harris had not been told what Appellee had said about talking to a lawyer. After introducing himself, Detective Harris provided Appellee with a *Miranda* warning card and read the warnings required by *Miranda* and Article 38.22.[4] Appellee signed and dated the card and agreed to talk. He told Detective Harris that he was next to Junior playing a game when Junior started throwing up. Appellee performed CPR on him and then wrapped him in a blanket and started driving around. He was afraid to take Junior to a hospital because of what people would think. Appellee eventually led the police to a dumpster where he had put Junior's body, which was later found in a landfill.

Appellee was charged with injury to a child by omission and capital murder of a child under ten years of age. He moved to suppress his statements to law enforcement and all pictures or diagrams of the victim's body.

**B. The Suppression Hearing**

At the suppression hearing, Detectives Hernandez and Harris testified to their interactions with Appellee. When asked what she thought Appellee meant by his statement that he needed a lawyer, Detective Hernandez said she took it to mean "[t]hat he's thinking he needs his children represented." When questioned by defense counsel, Detective Harris testified that he would have asked for clarification if he had known that Appellee had told another officer, "I want to talk to a lawyer." When asked by the trial court if he would have continued to question Appellee if Appellee

---

[4] *See* TEX. CODE CRIM. PROC. art. 38.22, § 2(a).

had told him that, Detective Harris responded, "No. If he had said it to me, I would have stopped the interview." When further asked if he would have stopped the interview if the suspect had said to him, "I need to talk to a lawyer," Detective Harris said he would have.

The trial court granted Appellee's motion to suppress.

## C. Appeal

The trial court denied the State's motion for reconsideration, and the State timely filed an appeal.[5] The court of appeals affirmed the trial court's order suppressing Appellee's statements to the police.[6] The court of appeals concluded that Appellee was subjected to custodial interrogation, that he invoked his Fifth Amendment right to counsel, and that police violated his right to counsel by interrogating him after that invocation.[7] The court of appeals conceded that the United States Supreme Court has held that *Miranda* rights cannot be invoked anticipatorily, i.e., in a situation other than custodial interrogation.[8] But the court of appeals held that Appellee had been subjected to a

---

[5] By order of the trial court, the proceedings below were stayed pending the final disposition of this appeal. *See* TEX. CODE CRIM. PROC. art. 44.01(e) (providing State is entitled to a stay in the proceedings pending the disposition of an appeal of a trial court's order granting a motion to suppress).

[6] *State v. Johnson*, Nos. 05-22-00480-CR, 05-22-00481-CR, 2023 WL 4676869, *6 (Tex. App.—Dallas July 21, 2023) (not designated for publication). As explained above, the trial court appears to have ruled that the physical fruits of Appellee's statement (photos and diagrams of the body) should also be suppressed. The State has never complained specifically about the suppression of that type of evidence, and the court of appeals did not address that issue. We observe, however that the suppression of physical fruits of a statement is not a proper remedy for a *Miranda* violation. *Contreras v. State*, 312 S.W.3d 566, 582 (Tex. Crim. App. 2010); *Baker v. State*, 956 S.W.2d 19, 22–23 (Tex. Crim. App. 1997) (discussing *Michigan v. Tucker*, 417 U.S. 433 (1974)). In any event, our holding today that there was no *Miranda* violation necessarily overturns all of the trial court's rulings that exclude evidence on the basis of *Miranda*.

[7] *Johnson*, 2023 WL 4676869 at *4-5.

[8] *Id.* at *4 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991)).

custodial-interrogation environment because he had been interrogated before being placed into custody and, after being placed in custody, he was sent back to the interview room with the plan to interrogate him later.[9]  The court of appeals also found that Appellee's statement, "I need to talk to a lawyer," was an unambiguous invocation of his Fifth Amendment right to counsel.[10]  In arriving at this conclusion, the appellate court relied in part on the notion that the trial court was free to discredit Detective Hernandez's testimony that she interpreted Appellee's request as one that ultimately sought representation for his children.[11]  The court of appeals also noted Detective Harris's statement that, if he had known about Appellee's statement about needing a lawyer, he would have stopped the interview.[12]  Finally, the court of appeals rejected the State's argument that Appellee waived any invocation of his right to counsel when he said, "I don't mind talking to nobody as long as I know my kids are alright."[13]  The court held that the State never satisfied the condition for talking because it never allowed Appellee to talk to his children to personally ensure that they were safe.[14]

## II. ANALYSIS

The Fifth Amendment provides in relevant part that no person "shall be compelled in any

---

[9] *Id.*

[10] *Id.* at *5.

[11] *Id.* at *6.

[12] *Id.*

[13] *Id.*

[14] *Id.*

criminal case to be a witness against himself."[15] In *Miranda v. Arizona*, the Supreme Court held that, to ensure that the right against compelled self-incrimination was honored, certain procedural safeguards had to be met.[16] One of these safeguards was to inform the suspect before custodial interrogation that he had a right to "the presence of an attorney, either retained or appointed."[17] This right included the right not only "to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires."[18] And if, after being informed of this right, the suspect requests counsel, "the interrogation must cease until an attorney is present."[19] The Supreme Court has referred to the requirements of *Miranda* as a "prophylactic rule,"[20] though one that is based in the Constitution.[21]

In *Edwards v. Arizona*, the Supreme Court went a step further: when a suspect invokes his right to counsel under *Miranda*, the police must not only cease any current interrogation, but they may not seek to interrogate the suspect again—even after further *Miranda* warnings—unless the suspect has been given counsel or the suspect himself initiates further communication with the

---

[15] U.S. CONST. amend. V.

[16] 384 U.S. 436, 444 (1966).

[17] *Id.* at 444, 466.

[18] *Id.* at 470.

[19] *Id.* at 473-74 ("Once warnings have been given, the subsequent procedure is clear. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.") (ellipses inserted).

[20] *Vega v. Tekoh*, 597 U.S. 134, 151 (2022).

[21] *Dickerson v. United States*, 530 U.S. 428, 437-38 (2000).

police.[22] The Supreme Court has referred to the *Edwards* rule as "a second layer of prophylaxis" on top of the *Miranda* rule.[23]

In *Minnick v. Mississippi*, the Supreme Court held that, once the *Miranda*-based right to counsel has been invoked, the *Edwards* prohibition against further police-initiated questioning remains, even after the suspect has consulted counsel, if counsel is not present during the interrogation.[24] The Supreme Court has referred to the *Minnick* construction of the *Edwards* rule as a third layer of prophylaxis.[25]

In *McNeil v. Wisconsin*, the Supreme Court held that it would not add to these protections by allowing a suspect to "anticipatorily" invoke *Miranda* rights.[26] The Court said that it had "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'"[27] In *McNeil*, the Supreme Court found that a defendant's request for an attorney at a bail hearing did not undermine subsequent *Miranda* waivers on offenses other that the one that was the subject of the bail hearing.[28] After holding that "the assertion of the Sixth Amendment right to counsel [e.g., at a bail hearing] does not *in fact* imply an assertion of the *Miranda* 'Fifth Amendment' right" to counsel, the Supreme Court addressed whether "we should declare it to be

---

[22] 451 U.S. 477, 484-87 (1981). *See also McNeil v. Wisconsin*, 501 U.S. 171, 176-77 (1991).

[23] *McNeil*, 501 U.S. at 176.

[24] 498 U.S. 146, 151-56 (1990).

[25] *Montejo v. Louisiana*, 556 U.S. 778, 794 (2009).

[26] 501 U.S. at 182 n.3.

[27] *Id.*

[28] *Id.* at 177-79.

such as a matter of sound policy."[29]  In answering that question "no," the Court observed, "If a

suspect does not wish to communicate with the police except through an attorney, he can simply tell

them that when they give him the *Miranda* warnings."[30]

The Supreme Court found it significant that the interrogations in *McNeil* were about offenses

other than the one on which the bail hearing was held because the Sixth Amendment right to counsel

is offense specific while the *Miranda* right to counsel is not.[31]  Under *Michigan v. Jackson*,[32] an

attempt to interrogate McNeil on the offense that was the subject of the bail hearing would have been

barred under the Sixth Amendment because of his prior invocation of counsel at the bail

proceeding.[33]

But *Michigan v. Jackson* was overruled in *Montejo v. Louisiana*.[34]  In overruling *Jackson*,

the Supreme Court said that the three layers of prophylactic protection imposed by *Miranda*,

*Edwards*, and *Minnick* were "sufficient."[35]  In concluding that *Jackson's* additional protection was

unnecessary, the Court reiterated the observation in *McNeil* that a defendant could simply invoke his

right to counsel at the time *Miranda* warnings are given:

> Under the *Miranda-Edwards-Minnick* line of cases (which is not in doubt), a
> defendant who does not want to speak to the police without counsel present need

---

[29]  *Id.* at 180 (emphasis in original, bracketed material inserted).

[30]  *Id.*

[31]  *Id.* at 175, 177, 180.

[32]  475 U.S. 625 (1986).

[33]  *McNeil*, 501 U.S. at 179-80.

[34]  556 U.S. at 797.

[35]  *Id.* at 794.

only say as much when he is first approached and given the Miranda warnings. At that point, not only must the immediate contact end, but "badgering" by later requests is prohibited. If that regime suffices to protect the integrity of "a suspect's voluntary choice not to speak outside his lawyer's presence" before his arraignment, it is hard to see why it would not also suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached. And if so, then *Jackson* is simply superfluous.[36]

In our later opinion in *Pecina v. State*, we discussed the Supreme Court's statement in *McNeil* that the Supreme Court has never accepted the notion of an "anticipatory" invocation of *Miranda* rights.[37] We held that, under *Montejo*, "the Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial questioning."[38] And echoing both *Montejo* and *McNeil*, we said that, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings."[39]

Under *McNeil* and *Montejo*, the *Miranda* right to counsel—with all of its prophylactic protections—becomes ripe for invocation only after (1) *Miranda* warnings have been given while the suspect is in custody or (2) if custodial *Miranda* warnings have not been given, when custodial interrogation begins.[40] The court of appeals erred by relying on a supposed "custodial interrogation

---

[36] *Id.* (citation omitted).

[37] 361 S.W.3d 68, 76 (Tex. Crim. App. 2012).

[38] *Id.* at 70.

[39] *Id.* at 76 & n.30 (quoting *Montejo*, 556 U.S. at 794).

[40] The second situation could occur if *Miranda* warnings are given prior to custody and a custodial interrogation later commences. *See Dowthitt v. State*, 931 S.W.2d 244, 252-53, 256-57 (Tex. Crim. App. 1996) (*Miranda* warnings given at around 11:00 p.m. during non-custodial interrogation that became custodial at around 1:00 a.m.). Or the second situation could occur if the police begin a custodial interrogation without ever having given *Miranda* warnings. In that latter

environment" to establish a violation of Appellee's right to counsel under *Miranda*. When Appellee voluntarily participated in the first two interviews, he was not in custody. Later, when Appellee was placed in custody, he was not given *Miranda* warnings, and no one attempted to interrogate him. Later still, before interrogating him, Detective Harris gave Appellee *Miranda* warnings for the first time. It was at that point—when the detective read the warnings—that Appellee had the choice contemplated by *Miranda*: having been told for the first time while in custody that he had a right to counsel before and during interrogation, Appellee could have invoked that right. He chose not to.

And the court of appeals erred to rely upon any supposed police "plan" to conduct a custodial interrogation later. Assuming, without deciding, that the record would support a conclusion that the police had such a plan, it does not matter. The only time a plan to interrogate matters is when a police officer begins a custodial interrogation without giving *Miranda* warnings as part of a "question-first, warn later" technique that is deliberately designed to circumvent *Miranda*.[41] That did not happen here. Appellee was given *Miranda* warnings before any custodial interrogation commenced. As we have explained, once he received the *Miranda* warnings, he could have then invoked his right to counsel. He did not. The police interrogation that followed complied with *Miranda*.

We reverse the judgments of the courts below and remand the case to the trial court for further proceedings consistent with this opinion.

---

instance of the second situation, however, the failure to give warnings will itself pose a problem for the admissibility of the statement. *See* discussion of *Miranda*, *supra*.

[41] *See Carter v. State*, 309 S.W.3d 31, 37-38 (Tex. Crim. App. 2010) (discussing *Missouri v. Seibert*, 542 U.S. 600 (2004)) ("[T]he question is whether the evidence shows that Trooper Henderson deliberately employed a two-step 'question first, warn later' interrogation technique to circumvent appellant's *Miranda* protections.").

DELIVERED: November 13, 2024
PUBLISH