COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § | No. 08-12-00102-CV |
| IN THE MATTER OF J.T.M., | § | Appeal from |
| A JUVENILE | § | 65th District Court |
|  | § | of El Paso County, Texas |
|  | § | (TC #1101216) |

## **O P I N I O N**

J.T.M., a juvenile, appeals from the juvenile court's adjudication order finding that he engaged in delinquent conduct by possessing less than two ounces of marihuana. After the juvenile court denied his motion to suppress evidence, J.T.M. entered a negotiated plea of true to the State's petition. In accordance with the parties' agreement, the court placed J.T.M. on probation for a period of five months. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

On October 9, 2011, El Paso Police Officers Jesus Hernandez, III and Paul Mata responded to a drunken disturbance call on Osage Street in El Paso shortly after midnight. When they turned onto Osage, they saw two males, each with a liquor bottle, walking on the sidewalk. After seeing the patrol car, the two males bent down and placed the liquor bottles under a car and continued walking. This behavior caused the officers to suspect that the young men were

juveniles and Hernandez stopped the patrol car. The officers stepped out of the vehicle and Officer Mata said, "Hey, come here." The young men complied and Mata did a quick pat-down search. Mata retrieved three bottles of vodka from beneath the vehicle. After Mata retrieved the liquor bottles, Hernandez asked how old they were and J.T.M. replied that he was sixteen years of age. The other young man, identified at the suppression hearing only by his first name, was seventeen years old. Hernandez then asked J.T.M. and his friend whether either had any drugs. J.T.M. responded that he had some "weed," and before Hernandez could do anything else, J.T.M. pulled seven small bags of marihuana out of his pocket and put them on the hood of the patrol car. Mata handcuffed J.T.M. and told him he was under arrest. After removing everything from J.T.M.'s pockets, including a set of car keys, Mata placed J.T.M. in the back of the patrol unit.

Hernandez asked J.T.M.'s friend if they had driven to the area and the friend said they had driven J.T.M.'s Tahoe which was parked down the street. Mata located the vehicle but did not enter it. He walked back to the patrol unit and told Hernandez that he could smell a strong odor of burned marihuana coming from the Tahoe. Mata asked J.T.M. if there was any more marihuana in the car and he replied, "Yes." Mata believed there would be additional evidence of the offense in the vehicle and testified he intended to search it regardless of J.T.M.'s answer to his question. Mata went back to the Tahoe and opened it using the key. He searched it and found scales, marihuana in two containers, and a camera bag containing $160.

J.T.M. filed a motion to suppress his statements and the evidence seized following an "illegal detention or arrest" and he alleged that the officers had violated his rights to counsel and to remain silent. The juvenile court denied the motion at the conclusion of the hearing. J.T.M. did not request and the juvenile court did not issue written findings of fact and conclusions of law. J.T.M. subsequently entered a plea of true to the petition alleging he had engaged in

- 2 -

delinquent conduct by possessing less than two ounces of marihuana and the court placed him on juvenile probation in accordance with the parties' agreement. J.T.M. reserved the right to appeal the pretrial suppression ruling.

**MOTION TO SUPPRESS**

In his sole issue on appeal, J.T.M. argues that the court erred by denying his motion to suppress because he was interrogated without first being taken to a magistrate and warned as required by Section 51.095 of the Texas Family Code and *Miranda v. Arizona*.[1] He further contends that the evidence seized as a result of the improper custodial interrogation, including the marihuana, is inadmissible as fruit of the poisonous tree. He does not raise any Fourth Amendment issues with respect to the warrantless search of his vehicle. Our review is likewise restricted.

*Standard of Review*

We review a ruling on a motion to suppress using a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997). An appellate court must give almost total deference to the trial court's assessments of historical fact and conclusions of law with respect to mixed questions of law and fact that turn on credibility and demeanor. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex.Crim.App. 2013); *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex.Crim.App. 2012). In contrast, an appellate court engages in a *de novo* review of mixed questions of law and fact that do not turn on credibility and demeanor. *Saenz*, 411 S.W.3d at 494; *Ortiz*, 382 S.W.3d at 372.

The issue whether J.T.M. was in custody for purposes of applying *Miranda* is a mixed question of law and fact that does not turn on credibility or demeanor. *See Saenz*, 411 S.W.3d at 494. Consequently, we apply (1) a deferential standard of review to the trial court's factual

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

assessment of the circumstances surrounding the interrogation, and (2) a *de novo* review to the court's ultimate legal determination that J.T.M. was not in custody. *See id.*; *see also Thompson v. Keohane*, 516 U.S. 99, 112-13, 116 S.Ct. 457, 465, 133 L.E.2d 383 (1995)(stating that when determining whether a person was in custody for *Miranda* purposes, an appellate court conducts a factual review of the circumstances surrounding the interrogation and makes an ultimate legal determination whether a reasonable person would not have felt at liberty to leave; the first inquiry is distinctly factual while the second inquiry calls for application of the controlling legal standard to the historical facts; this ultimate determination presents a mixed question of law and fact qualifying for "independent review"). The trial court did not make findings of fact because they were not requested. In this scenario, we view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Herrera v. State*, 241 S.W.3d 520, 527 (Tex.Crim.App. 2007), *quoting State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

*Custodial Interrogation*

J.T.M. contends that his statements indicating he was in possession of marihuana and the evidence seized as a result of those statements are inadmissible because the officers failed to administer the warnings required by Section 51.095 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 51.095 (West Supp. 2013). Section 51.095 incorporates the warnings required by *Miranda.* If an individual is subjected to questioning while in custody without being first warned of his rights and without voluntarily waiving those rights, then any evidence obtained as part of that questioning may not be used against him at trial. *See Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Section 51.095 only

- 4 -

applies to a statement made while the child is in the custody of an officer. TEX.FAM.CODE ANN. § 51.095(d)(2). Likewise, the requirements of *Miranda* do not apply unless the accused's statement is the result of custodial interrogation. *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex.Crim.App. 1996).

A person is "in custody" if, under the totality of the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293 (1994); *Dowthitt*, 931 S.W.2d at 254. When the person involved is a juvenile, courts consider his age and all the circumstances surrounding the interrogation to decide whether there was a formal arrest or a restraint of movement to the degree associated with formal arrest. *In re J.A.B.*, 281 S.W.3d 62, 65 (Tex.App.--El Paso 2008, no pet.); *In re V.P.*, 55 S.W.3d 25, 31 (Tex.App.-- Austin 2001, pet. denied). An appellate court determines custody based on objective circumstances, and any subjective intent of law enforcement officers to arrest is irrelevant unless that intent is communicated or otherwise manifested to the suspect. *Stansbury*, 511 U.S. at 325-26, 114 S.Ct. at 1530. In evaluating whether a reasonable person would believe his freedom has been restrained to the degree of a formal arrest, we are to look only to the objective facts surrounding the detention. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex.Crim.App. 2012). We do not consider the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529. The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Dowthitt*, 931 S.W.2d at 254, *citing Stansbury*, 511 U.S. at 324-25, 114 S.Ct. at 1530. Any undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration--the reasonable person standard presupposes an

innocent person. *Ortiz*, 382 S.W.3d at 373; *see Dowthitt*, 931 S.W.2d at 254, *citing Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991).

Texas courts have identified four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in a significant way; (2) when a law enforcement official tells a suspect he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) if there is probable cause to arrest and law enforcement officials do not tell the suspect that he may leave. *Dowthitt*, 931 S.W.2d at 255, *citing Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App. 1985). The first three situations require that the restriction on a suspect's freedom of movement must reach "the degree associated with an arrest" instead of an investigative detention. *Saenz*, 411 S.W.3d at 496; *Dowthitt*, 931 S.W.2d at 255. The fourth situation requires a showing that the officer manifested his knowledge of probable cause to the suspect by word or deed. *Saenz*, 411 S.W.3d at 496; *Dowthitt*, 931 S.W.2d at 255; *see Stansbury*, 511 U.S. at 325, 114 S.Ct. at 1530 (an officer's knowledge or beliefs regarding probable cause may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned). Custody is not established by the fourth situation unless the manifestation of probable cause combined with other circumstances of the interview, such as duration or factors of the exercise of police control over a suspect, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Saenz*, 411 S.W.3d at 496; *Dowthitt*, 931 S.W.2d at 255-57. The defendant has the burden of proving that a statement was the product of a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007).

*The First Statement*

J.T.M. made two statements to the police indicating he was in possession of marihuana: (1) when Officer Hernandez asked him if he had any drugs, J.T.M. answered "weed" and pulled it out of his pocket; and (2) when Officer Mata asked J.T.M. following his arrest whether he had any more marihuana in the Tahoe, J.T.M. answered affirmatively. Because the circumstances in which each statement was made are different, we will analyze the statements separately.

The evidence does not support a conclusion that any of the first three situations apply with regard to the first statement. Moreover, J.T.M. has restricted his argument on appeal to custody under the fourth situation. More specifically, J.T.M. complains that he was in custody because the officers had probable cause to arrest him for a curfew violation and minor in possession of alcohol and the officers did not tell him he was free to leave. J.T.M. argues that a reasonable person in the juvenile's shoes would not have felt free to leave. The police officers' failure to tell J.T.M. that he was free to leave does not, standing alone, establish custody. *See Saenz*, 411 S.W.3d at 497. For custody to be found, the officers had to manifest their knowledge or beliefs regarding probable cause to J.T.M., and even then, custody does not exist unless a reasonable person of J.T.M.'s age would have believed, under the totality of the circumstances, that he was under restraint to the degree associated with a formal arrest. J.T.M. does not address whether the evidence shows that the officers manifested their knowledge of probable cause to him.

J.T.M. asserts that he was in custody because he had been called over to the patrol unit by the officers, he was subjected to a brief pat-down, and the officers subjectively believed J.T.M. was not free to leave. This argument misses the mark because a person is not free to leave during the course of the investigative detention and suspects are often subjected to a pat-down

during the course of an investigative detention. Whether a person is under arrest or subject merely to a temporary investigative detention is a matter of degree and depends upon (1) the length of the detention, (2) the amount of force employed, and (3) whether the officer actually conducts an investigation. *Mount v. State*, 217 S.W.3d 716, 724 (Tex.App.--Houston [14th Dist.] 2007, no pet). The record does not demonstrate the precise amount of time the officers detained J.T.M. at the scene before asking the question which led to discovery of the marihuana in his pocket, but it appears from the officers' testimony that the encounter to that point was brief. The officers performed a quick pat-down search of each juvenile and spoke to them while standing beside the patrol car. They did not handcuff J.T.M., put him in the back of the patrol car, or employ any other type of physical restraint typically associated with an arrest. Consistent with the purpose of the temporary detention, the officers engaged in an investigation to confirm or dispel their suspicion that J.T.M. and his friend were underage and in possession of alcohol by determining the age of the young men and retrieving the liquor bottles the officers had seen them throw underneath a vehicle. There is no evidence in the record before us that the officers manifested their knowledge or belief regarding probable cause to J.T.M. prior to asking him whether he had any drugs.

Based on the totality of the circumstances, we conclude that a reasonable sixteen-year-old would not have believed he was under restraint to the degree associated with a formal arrest at the time the officer asked him whether he had any drugs. Consequently, the trial court did not err by denying J.T.M.'s motion to suppress the first statement or the marihuana seized from his pocket.

Even if the statement had been obtained in violation of *Miranda* and Article 51.095, it would not result in suppression of the marihuana which J.T.M. removed from his pocket and

placed on the hood of the patrol car. The "fruit of the poisonous tree" doctrine espoused in *Wong Sun* does not apply to mere violations of the prophylactic requirements in *Miranda*. *Baker v. State*, 956 S.W.2d 19, 22 (Tex.Crim.App. 1997), *citing Michigan v. Tucker*, 417 U.S. 433, 452, 94 S.Ct. 2357, 2368, 41 L.Ed.2d 182 (1974) and *Oregon v. Elstad*, 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985). The statement taken in violation of *Miranda* must be suppressed, but other evidence subsequently obtained as a result of that statement (i.e. the "fruits" of the statement) need not be suppressed. *Id.* The rule in *Wong Sun* requires suppressing the fruits of a defendant's statement only when the statement was obtained through actual coercion. *Baker*, 956 S.W.2d at 22, *citing Tucker*, 417 U.S. at 448-49, 94 S.Ct. at 2365-67 and *Elstad*, 470 U.S. at 314, 105 S.Ct. at 1296. Similarly, the state exclusionary rule found in Article 38.23[2] of the Texas Code of Criminal Procedure does not require suppression of evidence obtained as a result of a statement taken in violation of *Miranda*. *In re H.V.*, 252 S.W.3d 319, 327-28 (Tex. 2008); *Baker*, 956 S.W.2d at 24.

### *The Second Statement*

It is undisputed that J.T.M. had been placed under formal arrest at the time he made the second statement and he was not taken to a magistrate and admonished as required by Article 51.095. There is no evidence the officers admonished him as required by *Miranda* prior to asking him whether he had any additional marihuana in the Tahoe. Consequently, this statement is inadmissible and should have been suppressed by the trial court. The marihuana seized from the vehicle is not subject to suppression as the fruit of this violation of *Miranda* and Article 51.095 under either the federal or state exclusionary rules. *In re H.V.*, 252 S.W.3d at 327-28; *Baker*, 956 S.W.2d at 24.

---

[2] TEX.CODE CRIM.PROC.ANN. art. 38.23 (West 2005).

*Harm Analysis*

Having found that it was error to deny the motion to suppress J.T.M.'s post-arrest statement that there was additional marihuana in his vehicle, we must decide whether the trial court's judgment should be reversed. *See* TEX.R.APP.P. 44. The Texas Supreme Court has not determined whether the criminal or civil standard for harm applies to a juvenile case. *See In re D.I.B.*, 988 S.W.2d 753, 756 (Tex. 1999)(stating it had not decided whether the civil or criminal harm standard applied, but applying the civil standard because the State urged application of the rule and juvenile did not argue otherwise). Juvenile cases are quasi-criminal in nature as certain aspects of the trial are governed by the Code of Criminal Procedure and the rules of evidence applicable to criminal cases. TEX.FAM.CODE ANN. § 51.17; *In re D.I.B.*, 988 S.W.2d at 756. An appeal from an order of a juvenile court is to a court of appeals as in civil cases generally. *See* TEX.FAM.CODE ANN. § 56.01(a). Thus, appellate courts apply the Rules of Appellate Procedure applicable to civil cases as far as practicable. *See In re D.I.B.*, 988 S.W.2d at 756.

In a criminal case, the erroneous denial of a motion to suppress a statement taken in violation of *Miranda* is constitutional error subject to review under Rule 44.2(a)'s standard. *See Jones v. State*, 119 S.W.3d 766, 777 (Tex.Crim.App. 2003). That rule requires us to reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment. *See* TEX.R.APP.P. 44.2(a). The emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on "the propriety of the outcome of the trial." *Scott v. State*, 227 S.W.3d 670, 690 (Tex.Crim.App. 2007). The question for the reviewing court is not whether the jury verdict was supported by the evidence. *Id.* Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict. *Id.* In other words, the question is whether the error adversely affected the integrity of

the process leading to the conviction. *Id.* In the context of a plea-bargain case, we consider whether the erroneous ruling contributed in some measure to the State's leverage in the plea bargaining process. *See Holmes v. State*, 323 S.W.3d 163, 174 (Tex.Crim.App. 2010)(op. on reh'g).

The civil standard for harm does not distinguish between constitutional and non-constitutional errors and we would reverse only if the error (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals. TEX.R.APP.P. 44.1(a). This standard falls somewhere between Rule 44.2(a) and Rule 44.2(b) which applies to non-constitutional error in criminal cases. Under Rule 44.2(b), any non-constitutional error that does not affect substantial rights must be disregarded. TEX.R.APP.P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex.Crim.App. 2011). A conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Cobb v. State*, 85 S.W.3d 258, 272 (Tex.Crim.App. 2002).

We believe that constitutional error in juvenile cases should be analyzed for harm under Rule 44.2(a)'s standard because it is more protective of the juvenile's rights than Rule 44.1(a) as it examines the impact of the error on the integrity of the process leading to the juvenile's plea of true. *See In re D.A.R.*, 73 S.W.3d 505, 513 (Tex.App.--El Paso 2002, no pet.)(examining harm from court's failure to suppress statement made in violation of Article 51.05 under Rule 44.2(a)'s standard and finding evidence harmful because the adverse ruling likely impacted the juvenile's decision to plead true); *see also In re D.J.C.*, 312 S.W.3d 704, 721-22 (Tex.App.--Houston [1st Dist.] 2009, no pet.)(applying Rule 44.2(a) to erroneous admission of juvenile's statement taken during custodial interrogation and in violation of Section 52.02 of Family Code).

Under Rule 44.2(a)'s standard, we must consider whether J.T.M.'s admission that he had additional marihuana in his vehicle contributed in some measure to the State's leverage in the plea bargaining process. The admissible evidence consisted of J.T.M.'s admission that he had marihuana in his pocket, the marihuana he pulled out of his pocket, and the additional marihuana taken from his vehicle along with the scales and cash also found in the vehicle. J.T.M.'s friend told the police that they drove to the party in J.T.M.'s Tahoe and the keys to the vehicle were found in J.T.M.'s pocket following his arrest. Given this state of the evidence, suppression of J.T.M.'s statement to Mata that there was additional marihuana in the vehicle would not have diminished the State's leverage in the plea bargaining process. Accordingly, we conclude beyond a reasonable doubt that the constitutional error is harmless under Rule 44.2(a).

Alternatively, we hold that the error is harmless under Rule 44.1(a)'s harm standard because the record does not support a conclusion that the trial court's error probably caused the rendition of an improper judgment. The State had substantial evidence supporting a finding that J.T.M. knowingly exercised care, custody, and control of the marihuana found in his pocket. Based on the evidence admitted at the suppression hearing, the State had sufficient evidence affirmatively linking J.T.M. to the marihuana found in his vehicle even without his post-arrest statement made to Officer Mata that he had additional marihuana in the vehicle. Consequently, suppression of his second statement would not have reduced the State's bargaining power. We conclude that the trial court's failure to suppress the second statement probably did not cause the rendition of an improper judgment. Accordingly, we overrule J.T.M.'s sole issue and affirm the judgment of the juvenile court.

March 12, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

Concluding that J.T.M. was in custody, I would reverse and remand, so therefore, respectfully dissent.

Critical to the analysis, is J.T.M.'s compliance to Officer Mata's order to approach the patrol car. J.T.M. complied and voluntarily submitted to a pat down for officer safety. Officer Mata felt no weapons on the male he patted down, later identified as J.T.M.

Officer Hernandez then asked J.T.M. how old he was. J.T.M. answered he was 16 years old. After questioning J.T.M.'s friend, Officer Hernandez asked both if they had any drugs on them. In response, J.T.M. admitted that he had "some weed[,]" and removed seven bags of marihuana from the left pocket of his pants and put them on the hood of the patrol car. Officer Hernandez immediately secured the marihuana and Officer Mata handcuffed J.T.M., informing him he was under arrest and placing him in the back of the patrol car.

Under *Dowthitt,* J.T.M. was in custody under the fourth scenario because a reasonable 16 year-old in J.T.M.'s position would have believed he was not free to leave when Officer Hernandez asked him if he had drugs.

First, there was probable cause to issue a citation to J.T.M. for curfew and alcohol violations once Officers Hernandez and Mata ascertained that he was a juvenile. *See* TEX.ALCO. BEV.CODE ANN. § 106.05 (West Supp. 2012)(a minor commits an offense if he possesses an alcoholic beverage); MUNICIPAL CODE CITY OF EL PASO, TEXAS, Title 10, § 10.20.010 *et seq*. (2013)(prohibiting youths under the age of seventeen from public places within the City between the hours of 11 p.m. and 6 a.m.); *Vasquez v. State*, 739 S.W.2d 37, 44 (Tex.Crim.App. 1987)(holding that a law enforcement officer may make a warrantless arrest if he has knowledge based upon reasonably trustworthy information that would warrant a reasonable and prudent

person in believing that the suspect has committed or is committing a crime).

Second, neither Officer Hernandez nor Officer Mata told J.T.M. he was free to leave. In fact, Officer Hernandez testified that J.T.M. was not free to leave.

Third, Officers Hernandez and Mata never specifically told J.T.M that probable cause existed to issue a citation for curfew and alcohol violations, however, along with J.T.M.'s admission that he was a juvenile constituted manifestation of probable cause to cite him. *See Fuller v. State*, No. 02-06-00382-CR, 2008 WL 45794, *3 (Tex.App.--Fort Worth Jan. 3, 2008, no pet.)(mem. op., not designated for publication)("Although the officers never specifically told Fuller that probable cause existed, Fuller's admission of ownership of the marijuana did constitute manifestation of probable cause."); *In re D.A.R.*, 73 S.W.3d at 511 ("And certainly, after appellant made his confession, he would have realized Officer Gonzalez's probable cause to arrest him, given that the incriminating nature of his statement would substantiate Officer Gonzalez's probable cause.").

Fourth and finally, this manifestation of probable cause, when combined with the circumstances associated with J.T.M.'s questioning, would have led a reasonable 16-year-old in J.T.M.'s position to believe that he was under restraint to the degree associated with arrest. Officers Hernandez and Mata, who were in full uniform and carrying their sidearms, batons, Tasers, and handcuffs, engaged in a show of force when they approached J.T.M and his friend. They ordered J.T.M. and his friend to come to the patrol car and patted both of them down. Moreover, while questioning J.T.M., Officers Hernandez and Mata "made clear" to J.T.M. that "he wasn't free to leave, he wasn't going anywhere."

In light of these circumstances, J.T.M. was in custody when he admitted that he had "some weed" in response to Officer Hernandez's questioning. Although the events occurred in

quick succession, there was sufficient time for Officers Mata and Hernandez to realize that J.T.M. came into custody and should have been given the *Miranda* warnings by a magistrate as required by Section 51.095 of the Texas Family Code. Yet, no warnings were issued to J.T.M. and instead he was asked if he had drugs. Prior to Officer Hernandez' questioning, he knew J.T.M. was a juvenile, had been compliant with all the officer's requests, and was not in possession of any weapons.

The State contends J.T.M. was not in custody, but rather the subject of an investigative detention, and that, once the purpose of the detention was satisfied, Officers Hernandez and Mata did not unlawfully seize J.T.M by asking him if he possessed illegal contraband. We do not dispute that Officers Hernandez's and Mata's actions did not amount to an unlawful seizure under the Fourth Amendment. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex.App.--Amarillo 2003, pet. ref'd)(once the purpose of a traffic stop has been effectuated, the officer may ask the driver if he possesses illegal contraband and solicit voluntary consent to search the vehicle); *James v. State*, 102 S.W.3d 162, 173 (Tex.App.--Fort Worth 2003, pet. ref'd)(merely requesting consent to search does not amount to an unlawful seizure, and neither probable cause nor reasonable suspicion is required for the officer to ask). But an investigative detention may nevertheless evolve into custodial interrogation. *Dowthitt*, 931 S.W.2d at 255. As established above, this is exactly what occurred.

J.T.M. was detained temporarily to investigate possible alcohol and curfew violations. Once J.T.M admitted he was a minor, probable cause arose to arrest him for those offenses. At no point thereafter was J.T.M. told that he was free to leave and, in fact, was made to understand that "he wasn't free to leave, he wasn't going anywhere." Given the nature of the restraint and the show of force employed by Officers Hernandez and Mata in restraining J.T.M., a reasonable

juvenile of the same age would have considered himself in custody. J.T.M. has thus carried his burden of establishing that he was in custody when he made his inculpatory statement and placed the marihuana on the hood of the patrol car. *See Herrera*, 241 S.W.3d at 526. Because J.T.M. was in custody and he was not given the *Miranda* warnings required by Section 51.095 of the Texas Family Code, we conclude the trial court erred in denying his motion to suppress both his oral statement to police officers that he had marihuana and the marihuana.

The majority concludes that J.T.M. was not in custody when Officer Hernandez asked him if he had any drugs and that, even had J.T.M. been in custody, the marihuana itself would not have been suppressed as "fruit of the poisonous tree." Given the current state of the law, the majority is likely correct. *See e.g.*, *In re A.J.*, 63 A.3d 562, 564-65, 567-69 (D.C. 2013) (concluding that trial court erred in finding that juvenile was in custody where police officer encountered juvenile and companion on street, suspected them of being truant, and juvenile, in response to officer's question whether he had anything on him that the officer needed to know about, reached inside his jacket packet, said, "yeah, I got this," and pulled out a black BB gun); *United States v. Patane*, 542 U.S. 630, 636-37, 124 S.Ct. 2620, 2626, 159 L.Ed.2d 667 (2004)(plurality op.)(holding that the rule of *Miranda* does not require the suppression of physical evidence obtained after failing to read *Miranda* warnings); *In re H.V.*, 252 S.W.3d 319, 327-29 (Tex. 2008)(holding that the rule of *Miranda* does not require the suppression of physical evidence obtained after ignoring *Miranda* right to counsel). But by affirming the trial court's order denying J.T.M.'s motion to suppress his statements and the marihuana, the majority is also encouraging the police to use improper "fishing expeditions" when questioning juveniles. Because I believe this Court should forbid rather than permit this type of behavior, I respectfully dissent.

I recognize that it was legally permissible for Officer Hernandez to briefly detain J.T.M. and ask him questions to confirm or dispel his suspicion that J.T.M. was engaged in delinquent conduct. Officer Hernandez rightfully inquired as to J.T.M.'s age in performing his investigatory detention, and J.T.M's response confirmed Officer Hernandez's suspicion that J.T.M. was a minor in possession of alcohol. But in the absence of a basis to believe that J.T.M. was engaged in further delinquent conduct, J.T.M.'s self-incriminating response did not justify further questioning intended to elicit more incriminating responses and evidence. While that course of conduct may be tolerated when adult suspects are subject to investigatory detentions, it should not be when juveniles are in the crosshairs. This is because "children are fundamentally different from adults when it comes to understanding and invoking their rights." Benjamin E. Friedman, *Protecting Truth: An Argument for Juvenile Rights and a Return to* In re Gault, 58 UCLA L. REV. DISC. 165, 176 (2011)(internal citations omitted).

Given the physiology of brain development and growth, age--more so than intelligence--is the primary factor in determining whether a child has the capacity to reason and to make informed decisions. *Id*. at 176-78. In general, the younger the child, the less likely he is to possess such attributes. *Id.*; Barry C. Feld, *Juveniles' Competence to Exercise* Miranda *Rights: An Empirical Study of Policy and Practice*, 91 MINN. L. REV. 26, 39 (2006)(noting that while juveniles aged sixteen and older exhibited an understanding of *Miranda* warnings on a par with adults, juveniles younger than fifteen frequently misunderstood warnings). Here, J.T.M. was sixteen years of age, and he may well have had the capacity to make decisions on a par with an adult. The record, however, sheds no light on J.T.M.'s competence or capacity. But

> "[e]ven if an adolescent has an 'adult-like' capacity to make decisions, the adolescent's sense of time, lack of future orientation, labile emotions, calculus of risk and gain, and vulnerability to pressure will often drive him or her to make very different decisions than an adult would in similar circumstances." The

difference becomes more apparent in situations of stress, such as police interrogations or court proceedings. Immaturity can produce the same lack of capacity as mental illness, which means that many juveniles are in fact legally incompetent.

Friedman, *Protecting Truth*, 58 UCLA L. REV. DISC. at 177, internal citations omitted.

The law recognizes that, in many contexts, children are legally incompetent and thus accord them special protections in deference to their youth. For example, this Court has been vigilant in safeguarding the claims of injured minors. *See, e.g., Maes v. El Paso Orthopaedic Surgery Group, P.A.*, 385 S.W.3d 694, 698 (Tex.App.--El Paso 2012, pet. denied)("The claims of a minor may not be settled without court approval . . . [and] a parent does not have the right to settle a minor's claim without a guardian ad litem."); *Rivera v. Compton*, 392 S.W.3d 326, 333 (Tex.App.--El Paso 2012, pet. granted)("Because section 74.251(b) [of the Texas Civil Practice and Remedies Code] effectively cuts off a minor's cause of action before the minor is legally able to assert it, thereby requiring the minor to satisfy an impossible condition, and fails to provide an adequate substitute remedy, we hold that section 74.251(b) violates the open court provision of the Texas Constitution as applied to minors injured before their eighth birthday."). Why then is the majority so willing to permit law enforcement officials to engage in "fishing expeditions" when questioning a juvenile in the absence of a basis to believe that the juvenile was engaged in further delinquent conduct? By upholding the trial court's ruling, the majority invites the police to run roughshod over a class of people who need the most protection.

Here, when Officer Hernandez confirmed his suspicion that J.T.M was engaged in delinquent conduct, he should have informed J.T.M. of his constitutional rights before engaging in further questioning likely to elicit incriminating responses. Because Officer Hernandez did not do so, J.T.M.'s incriminating response that he had "weed" should have been suppressed by the trial court. And like the dissent in *Patane*, I believe that "courts should apply the fruit of the

poisonous tree doctrine lest we create an incentive for police to omit *Miranda* warnings." *Patane*, 542 U.S. at 645, 124 S.Ct. at 2631 (Souter J., dissenting).  Accordingly, the trial court should have excluded the marihuana obtained from J.T.M.'s person and from the Tahoe.  In sum, I would reverse the trial court's order refusing to suppress J.T.M.'s statement and the marihuana and therefore dissent from this Court's opinion that holds otherwise.

March 12, 2014

YVONNE RODRIGUEZ, Justice