Stanley Allison BAKER, Appellant,

v.

STATE of Texas, Appellee.

No. 72225.

Court of Criminal Appeals of Texas,
En Banc.

May 21, 1997.

Rehearing Denied Sept. 10, 1997.

Michele P. Esparza, Bryan, for appellant.

Deena J. McConnell, Asst. Dist. Atty., Bryan, Matthew Paul, State's Atty., Austin, for State.

*OPINION*

KELLER, Judge.

Appellant was convicted in April 1995 of a capital murder occurring on September 28, 1994. Tex. Penal Code Ann. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Article 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Article 37.071 § 2(h). Appellant raises six points of error. We will affirm.

In his sixth point of error, Appellant complains that the evidence introduced at the punishment phase of the trial is insufficient to sustain a unanimous vote on the special issues concerning future dangerousness and mitigating evidence. He contends first that

---

1. Unless otherwise indicated all future references to Articles refer to Code of Criminal Procedure.

the evidence does not support a finding that he would be a future danger to society and, second, that the evidence was insufficient to support a finding that there were no mitigating factors. *See* Art. 44.251. First, we will examine the sufficiency of the evidence regarding future dangerousness.

■ Initially, we note that in examining the sufficiency of the evidence regarding future dangerousness, we look at the evidence in the light most favorable to the jury's verdict. *Barnes v. State*, 876 S.W.2d 316, 322 (Tex.Cr.App.1994). In answering the special issues, the jury may consider all of the evidence adduced at the guilt/ innocence phase of the trial, in addition to the evidence presented at the punishment phase. *Id.* The evidence, viewed in a light most favorable to the jury's finding, shows the following: Appellant intended to kill his former employer. After walking nearly two miles in pursuit of his plan, he became hot and decided to steal a truck. He went into the Adult Video Store in College Station, where Wayne Williams, the night clerk, was working alone. Appellant took from Williams the keys to his truck, the currency from the cash register, and the night's receipts. Appellant then shot Williams three times. Appellant fled the scene in William's vehicle, returned home and loaded the stolen vehicle with his gear. The items found in the vehicle included the murder weapon, ammunition, a brass knuckled stiletto, a bulletproof vest, a garrote, and a variety of survival gear. In a notebook seized by police, appellant had written his goals for the year, which included, "30 + victims dead. 30 + armed robberies. Steal a lot of cars." Furthermore, on the day of his arrest appellant showed no remorse. We hold that the evidence presented in the instant case is sufficient to support the jury's finding regarding appellant's future dangerousness.

■ Second, we have previously stated that we will not review sufficiency of the evidence as regards the mitigation special issue. *McFarland v. State*, 928 S.W.2d 482 (Tex.Cr.App.1996). The weighing of mitigating evidence is a subjective determination undertaken by each individual juror, and we decline to review that evidence for sufficien-

cy. *Id.*, at 498. Finally, we have previously held that article 44.251 does not require this Court to conduct a sufficiency review of the mitigation issue. *Id.* Appellant's sixth point of error is overruled.

■ In point of error one, appellant attacks the trial court's denial of his motion to suppress statements he made to the authorities. He contends that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) because his unequivocal invocation of his right to remain silent was not scrupulously honored.

At about 6:10 a.m. on the day of the murder, Department of Public Safety Trooper Garry Parker heard a description of a truck involved in the robbery in College Station. About an hour later, he saw a truck matching the description. He followed the truck until it pulled into a driveway. When appellant got out of the truck, Officer Parker ordered him to lie down. Deputy Flores of the Bastrop County Sheriff's Department soon arrived. Officer Parker gave appellant *Miranda* warnings, and appellant made somewhat incriminating statements. DPS Investigator Ashley happened to come upon the arrest scene, and stopped and called for a Texas Ranger to come to the scene. Investigator Ashley took a recorded statement from appellant (statement # 1) while they waited for the Texas Ranger. During that statement, when appellant was asked if he wanted to talk about "this thing" he said "no." Investigator Ashley asked if appellant was sure he did not want to get it off his chest, and appellant again replied, "no." Investigator Ashley continued to question appellant, and appellant answered all his questions.

When Ranger Coffman arrived, he was not told of the statement that Investigator Ashley had just taken. Ranger Coffman read appellant the *Miranda* warnings and took another statement (statement # 2) from appellant. At about 8:45 a.m., Detectives Andreski and Prasifka of the College Station Police Department arrived on the scene. Detective Andreski gave appellant the *Miranda* warnings and took a statement (state-

ment # 3) from him. Appellant was later placed in the Bastrop County jail. Detective Andreski learned that police had obtained an arrest warrant for appellant. At 10:55 a.m. appellant was taken before a magistrate in Bastrop County and was warned pursuant to Article 15.17. Appellant was returned to the jail and fed lunch. The detectives then transported appellant back to the College Station police department. There, at about 2:00 p.m., Detective Andreski again gave appellant the *Miranda* warnings. Following these warnings, appellant was asked if he would consent to a search of his apartment. He agreed orally and later signed the consent form. From 2:01 p.m. until 2:39 p.m., appellant gave yet another statement.

Appellant filed a motion to suppress all four statements. The trial court granted Appellant's motion to suppress as to the first, second, and third statements but denied the motion as to the fourth. Appellant's fourth statement, however, was never introduced into evidence before the jury. We have held that where evidence obtained as a result of an interrogation has not been used, the appellate court need not entertain a complaint attacking admissibility of that evidence. *e.g., Kraft v. State,* 762 S.W.2d 612, 613 (Tex.Cr. App.1988) (when statement is not used by State either as evidence or otherwise to obtain a plea or conviction appellate court need not entertain a point of error attacking admissibility of that evidence); *Stiggers v. State,* 506 S.W.2d 609, 611 (Tex.Cr.App.1974) (no evidence obtained as a result of alleged illegal arrest was introduced into evidence, therefore, no reversible error); *Ferguson v. State,* 571 S.W.2d 908, 909 (Tex.Cr.App.1978) (overruled on other grounds) ("Where no evidence obtained as a result of a search is introduced in evidence, no error with respect to such search is presented for review"). Thus, even if the denial of his motion as to the fourth statement were error, it would appear that because the fourth statement was not introduced at trial, appellant would

be unable to show harm in the trial court's refusal to grant the motion to suppress. Tex.R.App.Proc. 81(b)(2). Point of error one is overruled.

In point of error two, appellant contends that the trial court erred in refusing to exclude evidence obtained from a search of his apartment. The police conducted this search pursuant to a written consent to search form that appellant signed. Appellant contends that the consent to search and the resulting items found were obtained as a result of the *Miranda* violation alleged in his first point of error. He argues that the evidence obtained should be excluded as fruits of illegal activity in accordance with *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and Article 38.23. We disagree.

The "fruit of the poisonous tree" doctrine espoused in *Wong Sun* does not apply to mere violations of the prophylactic requirements in *Miranda:* while the statement taken in violation of *Miranda* must be suppressed, other evidence subsequently obtained as a result of that statement (i.e. the "fruits" of the statement) need not be suppressed. *Michigan v. Tucker,* 417 U.S. 433, 452, 94 S.Ct. 2357, 2368, 41 L.Ed.2d 182 (1974); *Oregon v. Elstad,* 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985). The rule in *Wong Sun* requires suppressing the fruits of a defendant's statement only when the statement was obtained through actual coercion. *Tucker,* 417 U.S. at 448–449, 94 S.Ct. at 2365–67; *Elstad,* 470 U.S. at 314, 105 S.Ct. at 1296.

Both *Tucker* and *Elstad* involved the failure to give the required warnings rather than the failure to scrupulously honor warnings given. *See Tucker,* 417 U.S. at 435, 94 S.Ct. at 2359; *Elstad,* 470 U.S. at 300, 105 S.Ct. at 1288. Neither the Supreme Court nor this Court has addressed whether the *Tucker/Elstad* rule applies to the fruits of statements made in the latter context.[2] But

2. In one case, this Court addressed a claim that certain overheard admissions made by the defendant to his mother over the telephone were the fruit of an earlier statement obtained in violation of *Miranda. Autry v. State,* 626 S.W.2d 758, 763–765 (Tex.Crim.App.1982). The earlier statement

violated *Miranda* because the accused's invocation of his right to remain silent was not honored. *Autry,* 626 S.W.2d at 763. In holding that evidence of the subsequent conversation was admissible, we analyzed the issue under the attenuation of the taint doctrine and the independent

the principle is the same: mere noncompliance with *Miranda* does not result in a carryover taint beyond the statement itself. The failure to scrupulously honor a suspect's invocation of his right to remain silent by continuing questioning is not necessarily coercive. In finding an absence of coercion in *Tucker*, the Supreme Court noted that no legal sanctions, such as perjury or contempt, attached to a refusal to answer questions. 417 U.S. at 445, 94 S.Ct. at 2364. Moreover, the case was unlike classical examples of coercion, which ranged from torture, to prolonged isolation from family or friends in a hostile setting, to a seemingly endless interrogation designed to exhaust the accused. *Id.* at 448–449, 94 S.Ct. at 2365–67. Likewise, continuing questioning after an accused's invocation of his right to silence does not, by itself, involve torture, isolation from family and friends, endless interrogation, the attachment of legal sanctions to the refusal to answer questions, or any other coercive activities. One federal circuit has expressly applied the *Tucker/Elstad* rule to the failure to scrupulously honor a suspect's invocation of his *Miranda* right to counsel. *Krimmel v. Hopkins*, 44 F.3d 704, 708–709 (8th Cir.), *vacated on other grounds*, 56 F.3d 873 (1995). We hold that the *Tucker/Elstad* rule applies to the failure to scrupulously honor the invocation of *Miranda* rights. In the absence of actual coercion, the fruits of a statement taken in violation of *Miranda* need not be suppressed under the "fruits" doctrine of *Wong Sun.*.

 The absence of a federal exclusionary rule, however, does not preclude the application of Article 38.23, which requires the exclusion of evidence obtained in violation of the law. *State v. Daugherty*, 931 S.W.2d 268, 272–273 (Tex.Crim.App.1996) (Article 38.23 does not incorporate "inevitable discovery doctrine"). Instead, whether a recognized exception to a federal exclusionary rule also applies to Article 38.23 depends upon whether the exception is consistent with the language of Article 38.23. *Johnson v. State*, 871 S.W.2d 744, 749–751 (Tex.Crim.App.1994)

(attenuation of the taint doctrine consistent with "obtained" language in Article 38.23); *Daugherty*, 931 S.W.2d at 268 (inevitable discovery doctrine inconsistent with "obtained" language in Article 38.23). The state exclusionary rule provides in relevant part:

No evidence *obtained* by an officer or other person *in violation* of any provisions of the Constitution or laws of the State of Texas, or *of the Constitution or laws of the United States of America*, shall be admitted in evidence against the accused on the trial of any criminal case.

Article 38.23(a) (emphasis added). The question that concerns us here is whether a violation of *Miranda* requirements constitutes a violation of the "Constitution or laws of the United States of America."

In one case, we stated that *Miranda* fell within the ambit of Article 38.23. *Alvarado v. State*, 853 S.W.2d 17, 21 (Tex.Crim.App. 1993). But, this statement was clearly *dicta* for two reasons: (1) if *Miranda* had applied in that case, the federal exclusionary rule would have applied, so that reliance upon Article 38.23 would have been unnecessary, and (2) we held that *Miranda* did not apply, so we had no reason to reach the exclusionary rule question. *See Alvarado*, 853 S.W.2d at 21 (holding that *Miranda* does not apply to statements taken in foreign jurisdictions; "Because this is a question of interpretation of *Miranda* and whether it applies, we fail to see how the state and federal exclusionary rules would differ").

The United States Supreme Court has repeatedly emphasized that the *Miranda* warnings are not themselves rights protected by the federal Constitution but are merely prophylactic measures designed to safeguard the underlying right against compelled self-incrimination. *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630–31, 81 L.Ed.2d 550 (1984); *Tucker*, 417 U.S. at 444, 94 S.Ct. at 2363–64. The *Miranda* rule "sweeps more broadly than the Fifth Amendment itself," and "may be triggered even in the absence of

source rule. *Id.* at 764–765. We found any taint to be attenuated but did not address whether an

attenuation analysis was even necessary.

a Fifth Amendment violation." *Elstad,* 470 U.S. at 306, 105 S.Ct. at 1292. The rule often "provides a *remedy* even to the defendant who has suffered no identifiable constitutional harm." *Id.* at 307, 105 S.Ct. at 1292 (emphasis added). A violation of the rule is not itself a substantive illegality but merely affords a legal, albeit irrebuttable, presumption that the right against compelled self-incrimination has not been intelligently exercised. *Id.* at 306 n. 1 & 310, 105 S.Ct. at 1292 n. 1 & 1293–94.

The above discussion of Supreme Court precedent shows that the *Miranda* rule is simply a judicially imposed rule of evidence: questioning in violation of *Miranda* is not itself illegal; the answers to such questioning are simply inadmissible in court. This rule of evidence was formulated out of a concern that a bright-line rule might be necessary to adequately protect a defendant's constitutional right against compelled self-incrimination, but even in *Miranda,* the Court "disclaimed any intent to create a 'constitutional straitjacket' and invited Congress and the States to suggest 'potential alternatives for protecting the privilege.'" *Elstad,* 470 U.S. at 307 n. 1, 105 S.Ct. at 1292 n. 1 (citing and quoting *Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624). Hence, the *Miranda* requirements embody an exclusionary rule or remedy rather than a substantive right or entitlement. Statements taken in violation of *Miranda* are not obtained in violation of the law; they are simply statements that are subject to a judicially imposed prophylactic rule of exclusion, whose purpose is to safeguard a constitutional right. Therefore, mere violations of the *Miranda* rule are not covered by the state exclusionary rule contained in Article 38.23.

 Appellant contends in his supplemental brief that his statement was obtained through actual coercion. If true, both *Wong Sun* and Article 38.23 would require a taint analysis. But, appellant does not explain how investigator Ashley's questioning was coercive, and after reading the record, we discern no actual coercion present. Neither *Wong Sun* nor Article 38.23 requires a

"taint" analysis in the present case. Point of error two is overruled.

Appellant maintains in his third point of error that his fourth statement and evidence derived therefrom, including the consent to search and the items seized, were inadmissible because the arresting officer failed to comply with Art. 15.17.[3] Regarding the arresting officer's alleged impropriety, Appellant states in his brief:

> ... The Appellant was not taken directly to the magistrate in Brazos County, Texas but to the police station in violation of Art. 15.17 Tex.Code Crim.Proc. The error was preserved throughout trial. This error was not harmless.

Appellant fails to cite in the record to where this error was preserved. Nevertheless, contrary to appellant's assertion, the arresting officer complied with Article 15.17. Article 15.17 and Article 15.18 require that a person who is arrested be taken before a magistrate in the county of arrest in order to be given his magistrate's warnings and have bail taken if allowed by law. Officials took appellant before a magistrate in Bastrop County, the county of arrest, where he was given his magistrate's warnings. Article 15.17 requires *nothing more.* Appellant's third point of error is overruled.

 Appellant in his fourth point of error contends that the trial judge erred in not hearing appellant's motion for a new trial within the required 75 days. *See* Tex.R.App. Proc. 31(e). Appellant was sentenced on July 26, 1995, and filed a timely motion for new trial on August 25, 1995, with a request that the motion be set for a hearing. Without objection from appellant the trial judge set a hearing for October 12, 1995, which fell outside the 75–day period. After a rescheduling, the trial judge held the hearing for October 27, 1995, *again without objection from appellant.*

By failing to object to the untimely setting, Appellant has failed to preserve his complaint that the trial judge should have held a

**3.** Appellant frames his argument in terms of *all statements,* but all except the fourth statement were suppressed.

timely hearing. Tex.R.App.Proc. 52(a). Appellant's fourth point of error is overruled.

In appellant's fifth point of error, he complains that "[t]he trial court erred after evaluating the evidence at the motion for new trial hearing and stating the trial court would deny the motion for new trial." As noted in the previous point of error, the trial judge held a hearing on appellant's motion for new trial, even though more than 75 days had passed after sentence was imposed. Texas Rule of Appellate Procedure 31(e) states in pertinent part:

(1) The court shall determine a motion for new trial within 75 days after date sentence is imposed or suspended in open court.

\* \* \* \* \* \*

(3) A motion not timely determined by written order signed by the judge shall be considered overruled by operation of law upon expiration of the period of time prescribed in section (e)(1) of this rule.

Thus, Appellant's motion for new trial had been overruled by operation of law before the trial court held the hearing. Appellant cannot complain of the trial court's failure to grant a new trial because the trial court had no authority to do so. *See State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47, 49 (Tex.Crim.App. 1987). Appellant's fifth point of error is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

BAIRD, J., concurs with note. For the reasons stated in *Matamoros v. State,* 901 S.W.2d 470, 479 (Tex.Cr.App.1995) (Baird, J., concurring), I join only the judgment of the Court. Additionally, because the opinion adds nothing to the jurisprudence of the State, I disagree with the decision to publish.

OVERSTREET, J., concurs in the result.

WOMACK, J., joins the judgment of the Court and, except as to Points 2 and 6, its opinion.