PD-1376-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/23/2015 5:59:45 PM
Accepted 12/28/2015 12:51:32 PM
ABEL ACOSTA
CLERK

# NO. PD-1376-15

## In the Court of Criminal Appeals of Texas

Roel Alvarez Lopez,
*Appellant*

*v.*

State of Texas,
*Appellee*

ON PETITION FOR DISCRETIONARY REVIEW
FROM CAUSE NO. 13-13-00307-CR
IN THE THIRTEENTH COURT OF APPEALS,
REVIEWING CAUSE NO. CR-981-12-D
206TH JUDICIAL DISTRICT COURT OF HIDALGO COUNTY, TEXAS
HON. ROSE GUERRA REYNA PRESIDING

### APPELLANT ROEL ALVAREZ LOPEZ'S PETITION FOR DISCRETIONARY REVIEW

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

Brandy Wingate Voss
State Bar No. 24037046
SMITH LAW GROUP LLLP
820 E. Hackberry Ave.
McAllen, TX 78501
(956) 683-6330
(956) 225-0406 (fax)
*Counsel for Appellant Roel Alvarez Lopez*

FILED IN
COURT OF CRIMINAL APPEALS

December 28, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

| **Appellant** | **Counsel for Appellant** |
|---|---|
| Roel Alvarez Lopez | Brandy Wingate Voss<br>Smith Law Group, P.C.<br>820 E. Hackberry Ave.<br>McAllen, Texas 78501 |

**Trial Counsel**

Hon. Manuel Luis Singleterry, now Judge of the 93rd District Court of Hidalgo County, Texas

| **Appellee** | **Counsel for Appellee** |
|---|---|
| State of Texas | Glen Devino<br>Hidalgo County Criminal District Attorney's Office<br>Appeals Section<br>100 N. Closner, 3rd Floor<br>Edinburg, Texas 78539<br>glenn.devino@da.co.hidalgo.tx.us |

**Trial Counsel**

Joaquin Zamora
State Bar No. 24003229
Victoria Muniz
State Bar No. 24074772
100 N. Closner, 3d Floor
Edinburg, Texas 78539

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL................................................................i

TABLE OF CONTENTS ...................................................................................ii

INDEX OF AUTHORITIES.............................................................................iii

STATEMENT REGARDING ORAL ARGUMENT................................................. v

STATEMENT OF THE CASE ............................................................................ v

STATEMENT OF PROCEDURAL HISTORY.......................................................vii

GROUNDS FOR REVIEW...............................................................................vii

ARGUMENT................................................................................................... 1

I.        Appellant raised coercion with respect to the initial interview..................2

II.       This Court should protect an arrestee's right to stop an
interrogation, by invoking the right to counsel, and exclude
the fruits of a statement taken in violation of that right. ..........................5

CONCLUSION AND PRAYER.............................................................................12

CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e) .......................................13

CERTIFICATE OF SERVICE..............................................................................14

APPENDIX ....................................................................................................15

# INDEX OF AUTHORITIES

**Cases**

*Arizona v. Roberson,*
   486 U.S. 675 (1988)................................................................................8

*Ashcraft v. State,*
   900 S.W.2d 817 (Tex. App.–Corpus Christi 1995, writ ref'd)...............................4

*Baker v. State,*
   956 S.W.2d 19 (Tex. Crim. App. 1997)............................................................6, 10

*Commonwealth v. Martin,*
   827 N.E.2d 198 (Mass. 2005) .......................................................................6

*Contreras v. State,*
   312 S.W.3d 566 (Tex. Crim. App. 2010)........................................................3, 5, 6

*Edwards v. Arizona,*
   451 U.S. 477 (1981)...............................................................................v, 8

*Ex parte Lewis,*
   219 S.W.3d 335 (Tex. Crim. App. 2007)............................................................11

*In re H.V.,*
   179 S.W.3d 746 (Tex. App. 2005), *aff'd in part, rev'd in part,*
   252 S.W.3d 319 (Tex. 2008)..........................................................................10

*In re H.V.,*
   252 S.W.3d 319 (Tex. 2008)............................................................................6

*Lopez v. State,*
   No. 13-13-00307-CR, 2015 WL 5602278
   (Tex. App.–Corpus Christi June 25, 2015)
   (mem. op.; not designated for publication) ................................................v, vi, vii, 3

*Lynumn v. Illinois,*
  372 U.S. 528 (1963)........................................................................4

*Maryland v. Shatzer,*
  559 U.S. 98 (2010)................................................................ 10, 11

*McNeil v. Wisconsin,*
  501 U.S. 171 (1991)........................................................................8

*Olson v. State,*
  484 S.W.2d 756 (Tex. Crim. App. 1969).........................................6

*State v. Knapp,*
  700 N.W.2d 899 (Wis. 2005)..........................................................6

*State v. Farris,*
  849 N.E.2d 985 (Ohio 2006)...........................................................6

*State v. Peterson,*
  923 A.2d 585 (Vt. 2007).................................................................6

*United States v. Gilkeson,*
  431 F.Supp.2d 270 (N.D.N.Y. 2006).......................................passim

*United States v. Patane,*
  542 U.S. 630 (2004)....................................................................5, 9

**Rules**

TEX. R. APP. P. 47.1............................................................................4

iv

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

Appellant, Roel Alvarez Lopez, respectfully requests that this Court grant his petition for discretionary review and respectfully shows:

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary if this Court determines that, as required by Texas Rule of Appellate Procedure 47.1, the lower court failed to address all arguments made by Appellant and remands to the court of appeals for further consideration. However, if the Court decides the issue in the first instance, Appellant believes that oral argument would be beneficial, given the size of the record on appeal. Appellant alternatively asks the Court to extend the exclusionary rule in Texas Code of Criminal Procedure article 38.23 to fruits of a statement taken in violation of *Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981). To the extent the Court agrees and desires oral argument, Appellant believes it would be beneficial.

## STATEMENT OF THE CASE

The Thirteenth Court of Appeals issued its decision on June 25, 2015, affirming Appellant's conviction for murder and sentence of 37 years' imprisonment. *Lopez v. State*, No. 13-13-00307-CR, 2015 WL 5602278 (Tex. App.—Corpus Christi June 25, 2015) (mem. op.; not designated for publication) (App'x). The court's opinion reflects that police interrogated Appellant over the course of

v

three days after his arrest. *Id.* at *1-2. Because the police did not comply with the statutory requirements for taking a statement, the State did not offer the actual statements given by Appellant—yet they nevertheless used evidence that was the "fruit" of those statements. *Id.* at *2-3.

The court of appeals held that absent coercion, the fruits of a statement taken improperly after an arrestee has invoked his right to counsel are not subject to exclusion under Texas Code of Criminal Procedure 38.23. *Id.* at *4-5. The court of appeals then held that the only relevant interrogation—which led the police to witnesses and physical evidence used to convict Appellant—occurred on the first day of his arrest, and that Appellant did not assert any police coercion with respect to that particular interrogation. *Id.* at *5-6.

First and foremost, Appellant asks this Court to find that the court of appeals failed to address all of Appellant's arguments—specifically, that the statements he gave on the first day of his interrogation were coerced. Appellant did, in fact, assert coercion during that first interrogation, but the court of appeals refused to address those arguments, even after the omission was pointed out on rehearing.

Nevertheless, Appellant requests that this Court hold that an *Edwards* violation implicates article 38.23, and coercion is not required to exclude from the trial evidence that is indisputably the "fruit of the poisonous tree."

# STATEMENT OF PROCEDURAL HISTORY

*Date and citation to Court of Appeals Opinion:*  *Lopez v. State*, No. 13-13-00307-CR, 2015 WL 5602278 (Tex. App.—Corpus Christi June 25, 2015) (mem. op.; not designated for publication).

*Motion for Rehearing and Reconsideration En Banc:*  A motion for rehearing was filed on September 9, 2015.

*Court of Appeals' Disposition:*  The Thirteenth Court of Appeals denied the motion for rehearing on September 24, 2015.

# GROUNDS FOR REVIEW

1.      Did the court of appeals improprly fail to address all of Lopez's arguments regarding coercive police tactics during the first interview?

2.      Should the Court determine that interrogation techniques that violate *Edwards v. Arizona,* as opposed to a mere failure to provide *Miranda* warnings, invoke the Texas exclusionary rule in Texas Code of Criminal Procedure Article 38.23 with respect to fruits of the statement?

3.      Alternatively, should the Court construe Article I, section 10 as providing greater protection than the Fifth Amendment when an arrestee invokes his right to counsel, but police re-initiate questioning? (unbriefed)

# ARGUMENT

This case involves the egregious violation of Lopez's rights by the Pharr police department. Using the tainted evidence obtained as a result of Lopez's statements to police—after he invoked his right to counsel—the State obtained a conviction for murder. Lopez is now serving a 37-year prison term. CR224, 229.[1]

The court of appeals affirmed by erroneously deciding that Appellant did not assert the police tactics used during the first interview were coercive. Appellant, however, briefed that argument below. This Court should afford Appellant the opportunity to have his arguments decided.

Even so, this case is unsurprisingly similar to other cases the courts have recently been called upon to address. Unfortunately, a pattern has emerged, and it's time for this Court to step in. This Court should hold that the invocation of the right to counsel during an interrogation means the interrogation has to stop, and should deter future violations through the exclusion of evidence obtained thereafter if the police do not honor the request for counsel.

---

[1] The clerk's record will be cited as "CR[page]" and "[volume]Supp.CR[page]," respectively. The reporter's record will be cited as "[vol.]RR[page]" and "Supp.RR[page]," respectively. The exhibit volumes will be cited as follows: "[vol]RRSX[exhibit number]" for the State's exhibits, and "[vol]RRDX[exhibit number]" for the Defense's exhibits.

# I.    Appellant raised coercion with respect to the initial interview

In his amended brief in the court of appeals, Appellant meticulously described the events during the interrogation. *See* Amended Br. at 1-10. Appellant expressly complained about coercive police action during both the initial interviews, stating:

> During the interrogation, Lopez spoke about his whereabouts on that Sunday. He informed the officers that he had been at a barbecue at a friend's house and identified some of the people who had seen him there: Jennifer Gonzales, Danny Anguiano, and Joel Gonzalez. 16 RR 44:19–25, 51:4–11; 149:16–23. He mentioned that he had borrowed a pair of boots from Joel. 16 RR 77:22–78:19. He also stated that he had been wearing a red shirt and jeans. 16 RR 77:20–21. Though the police denied it, according to Lopez, the police threatened to arrest his family members, including his brother, and have his brother's children placed into foster care. 16 RR 164:22–165:10. At one point while the officers were not in the room, Lopez approached the office door to ask a sergeant where his lawyer was. 16 RR 166:17–167:8. Rather than respond, the sergeant covered the window in the door with a piece of paper. *Id.*

*Id.* at 2-3.

The appellate record shows that Appellant testified he was threatened during his "interrogations" on the first day—meaning both the initial and the subsequent recorded interrogation. 16RR164-65. While he testified that Investigator Chapa did threaten to arrest his parents for making false reports, which occurred during the recorded interview, he also testified that was not the only threat made. 16RR180. He testified that Investigator Chapa threatened to take his brother's kids away. *Id.*;

2

16RR165. Appellant then expressly claimed that those threats were coercive. 16RR181.

The court of appeals, in a footnote, stated that the evidence of coercion was controverted. *Lopez*, 2015 WL 5602278, at *5 n.4. Investigator Chapa initially denied making any threats or coercive statements *on the third day*, and later reaffirmed that testimony. 9RR15, 90-91; 16RR58-59; *see also* 2Supp.RR128. But Investigator Chapa never expressly denied making any threatening statements during the initial interview.[2]

And, Investigator Chapa acknowledged that, during the third day of interrogation, when asked whether anything had happened against Appellant's will to obtain a confession, Appellant complained that Chapa had threatened to arrest his mom, dad, and brother, and had the authority to do so. 16RR59. The State did not bother to explain this statement or provide testimony that the threat to which Appellant referred did not happen during the first interview.

Threats made against family members of an accused may result in the accused's confession being deemed involuntary. *Contreras v. State*, 312 S.W.3d 566, 576 (Tex. Crim. App. 2010). While courts have held that it is normal to inform an

---

[2] In fact, Investigator Chapa testified that Appellant was placed in handcuffs during that initial interview because he became aggressive and disagreeing the police were questioning him about a homicide. 16 RR 48.

3

accused that occupants of the accused's house might be held accountable for stolen property found on the premises, that holding does not address a threat to take away an accused's brother's children. *See Ashcraft v. State*, 900 S.W.2d 817, 823 (Tex. App.–Corpus Christi 1995, writ ref'd). Threats to take away an accused's children have been held to be coercive, and that rule would certainly apply to a threat to take away an accused's nephews and nieces from their parents. *See Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). This is particularly true when combined with the additional threat to Appellant's parents. And the record reveals no basis for any probable cause to make any report to CPS against Appellant's brother, as argued by Appellant in his opening brief. *See* Amended Br. at 24.

While it is true that Appellant raised additional coercive circumstances during the remaining interviews, Appellant's brief did, in fact, challenge and raise coercive threats made during the initial interview. *See* Amended Br. at 2-3. The testimony supports this allegation as well.

A court of appeals has an obligation to issue an opinion that decides all issues presented. TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). For all the foregoing reasons, Appellant urges the Court to either address Appellant's arguments here, or remand

4

to the court of appeals for further consideration, and reverse the judgment of the trial court.

## II. This Court should protect an arrestee's right to stop an interrogation, by invoking the right to counsel, and exclude the fruits of a statement taken in violation of that right.

Police routinely fail to scrupulously honor an arrestee's invocation of the right to counsel and obtain information that they can use to find other evidence against the arrestee. While they know the statement itself cannot be used, it really doesn't matter if the fruits of the statement *can* be used. Thus, police officers can violate a person's right to counsel and to terminate an interrogation with impunity, and with no consequences. This Court should correct that situation.

Under United States constitutional precedent, where there has been a failure to provide *Miranda* warnings, the fruits of the statement can be used, and the State can obtain even though *Miranda* has been violated. *United States v. Patane*, 542 U.S. 630 (2004); *Contreras*, 312 S.W.3d at 582. This Court, and the Texas Supreme Court as a result, have held that the actual invocation of the right to counsel does not require application of the exclusionary rule, in part based on the rationale ultimately adopted by the Supreme Court in *United States v. Pantane*. *Baker v. State*,

5

956 S.W.2d 19, 24 (Tex. Crim. App. 1997); *see also Contreras*, 312 S.W.3d at 582; *In re H.V.*, 252 S.W.3d 319, 327 (Tex. 2008).[3]

Courts have distinguished *Pantane* under circumstances similar to this case, which this Court refused to do in *Baker.* This Court should re-examine *Baker* and distinguish *Pantane,* to give the Fifth Amendment right to counsel the force it and citizens deserve. The exclusionary rule should apply where a party invokes his or her right to counsel during a custodial interrogation, and that request is not scrupulously honored.

For example, in *United States v. Gilkeson*, the district court for the Northern District of New York, in a lenghty opinion, distinguished *Miranda/Edwards* violations from those addressed in *Pantane*, and applied the federal exclusionary rule. 431 F.Supp.2d 270 (N.D.N.Y. 2006). The *Gilkeson* court summarized the foundations for *Miranda* and the exclusionary rule, and noted that if *Miranda's*

---

[3] However, even if the "fruit of the poisonous tree" exclusionary rule does not apply to prophylactic *Miranda* violations, that does not preclude this Court from holding that Article I, section 10 of Texas Constitution and article 38.23 *do* require exclusion of the fruits of an improperly obtained statement. *Olson v. State*, 484 S.W.2d 756, 761 (Tex. Crim. App. 1969) ("Nevertheless, as to the true scope of the Texas Constitution, we must ultimately follow our own lights."). Appellant asks the Court to do so. Under similar language, other states have applied an exclusionary rule, holding that a violation of the self-incrimination clause of their constitutions required exclusion of the "fruit of the poisonous tree." *State v. Peterson*, 923 A.2d 585, 593 (Vt. 2007). In doing so, the Vermont Supreme Court noted that several other states had rejected *Patane* in construing their state constitutions. *See Commonwealth v. Martin*, 827 N.E.2d 198, 203 (Mass. 2005); *State v. Knapp*, 700 N.W.2d 899, 917-20 (Wis. 2005); *State v. Farris*, 849 N.E.2d 985, 996 (Ohio 2006). Due to the word count limits in this brief, Appellant requests the opportunity to brief this issue fully in briefing on the merits.

rationales have not been implicated, the exclusionary rule has not be applied. *Id.* at 285. It summarized *Pantane*'s refusal to apply the exclusionary rule in this construct as follows:

> The Court recently addressed the issue of the application of the fruit doctrine in another factual context in *United States v. Patane*. In *Patane*, the defendant was arrested for harassing his ex-girlfriend, and a restraining order was issued. While the matter was under investigation it came to the attention of the local police department that the defendant, a convicted felon, illegally possessed a Glock pistol. Two officers went to Patane's residence to question him about violating the restraining order and the discussion culminated in an arrest. The officer "attempted to advise [Patane] of his Miranda rights but got no further than the right to remain silent. At that point, [Patane] interrupted, asserting that he knew his rights, and neither officer attempted to complete the warning." When asked about the Glock, Patane was reluctant to answer but eventually told an officer that the pistol was in his bedroom. The gun was retrieved and the government offered it at trial on charges for possession of a firearm by a convicted felon.

> The issue before the Court was whether the gun should have been suppressed as the fruit of an unwarned statement. The Court determined that the exclusionary rule did not apply to bar the introduction of the gun. The *Patane* plurality began by reaffirming the close-fit requirement between the Self–Incrimination Clause and any application of a suppression rule proposed to protect it and determined that here there was not a close fit. But the Court focused its analysis on the inapplicability of the deterrence rationale. "[U]nlike unreasonable searches under the Fourth Amendment or actual violations of the Due Process Clause or the Self–Incrimination Clause, there is, with respect to mere failures to warn, nothing to deter. There is therefore no reason to apply the 'fruit of the poisonous tree' doctrine of [Wong Sun]."

> . . .

7

Beyond this ground for finding that the deterrence rationale did not apply, the facts of the *Patane* case do not implicate any of the traditional concerns of custodial interrogations. In fact, in *Patane*, it was the arrestee who "caused" the *Miranda* quandary by interrupting the reading of his *Miranda* rights and stating that he knew them. There was no indication of police misconduct. *Miranda's* application to assure the trustworthiness of evidence was not implicated either as his statements were indisputably voluntary. Again, since the facts did not suggest coercion or implicate the trustworthiness of the evidence the exclusionary rule was not applied to bar the introduction of Miranda-offending evidence.

*Id.* at 286-88 (citations omitted).

Turning to violations of the right to counsel, the *Gilkeson* court noted that the "purpose of the *Miranda–Edward's* guarantee … is to protect a quite different interest: the suspect's 'desire to deal with the police only through counsel.'" *Id.* at 289-90 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991); *Edwards*, 451 U.S. at 484). The court held that the right to counsel is different than the other *Miranda* rights, and has been augmented—in *Edwards v. Arizona*—and fortified in *Arizona v. Roberson. Id.* at 289-90 (citing *Edwards*, 451 U.S. 477; *Roberson*, 486 U.S. 675, 681 (1988)).

The *Gilkeson* court noted that in *Patane*, the Supreme Court did not address a *Miranda-Edwards* violation, and there was not even a violation of *Miranda* that was found in *Patane. Id.* at 292. In fact, the *Patane* Court stated that "[P]olice do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule articulated in cases such as Wong Sun

8

does not apply." *Id.* (quoting *Patane*, 542 U.S. at 637). And while a failure to heed *Miranda's* requirement of a warning did not implicate a need for deterrence—"[t]here is, with respect to mere failures to warn, nothing to deter"—a *Miranda-Edwards* violation is different. *Id. Miranda* not only contained prophylactic warning requirements, it contained an absolute prohibition on continuing an interrogation once the *Miranda* right to counsel had been invoked. *Id.*

And the court found the difference dispositive:

> In this case, the *Miranda–Edwards* violation is clear and the Court's prohibition was ignored. While there may be some play in the words of the *Miranda* warning or the timing of the warning, it could not be clearer that police must cease questioning once an arrestee invokes the right to counsel. If this aspect of the *Miranda* rule may be disregarded without consequence then the rule is of no avail. Defendant Gilkeson asked for an attorney on three occasions and his requests were ignored. Where the Court has fortified its procedural safeguards in the *Miranda* context, a corresponding scope of the exclusionary rule is warranted.

> Furthermore, the apparent attempt to bypass the *Miranda* requirement in this case is akin the question-first conduct in *Seibert*, in which the plurality decision focused on the deterrence rationale. Of course, the need for deterrence is not implicated by good-faith police conduct. Accordingly, the Court has only extended *Miranda's* protection in *Seibert* where the police had deliberately sought to contravene its purposes. The police in this case sought to contravene *Miranda's* purposes. The police officers ignored Gilkeson's repeated requests in a calculated manner in an attempt to confuse the defendant and/or to undermine his understanding of the effect of his assertion of his right to counsel.

9

As the dissent in *Patane* explained, the issue is not whether the nontestimonial nature of the evidence is directly tied to the Self–Incrimination Clause, but whether by admitting the *Miranda*-offending evidence an incentive is created for police misconduct. As a practical matter, once an arrestee has invoked the right to counsel, the police know that the interview is the last opportunity they will have to interrogate the arrestee without counsel. There is no incentive to cease questioning if the arrestee can be induced to make incriminating statements or to reveal information which leads to physical evidence that can be admitted in a subsequent criminal case. The fact that the statements themselves would not be admissible is not a sufficient remedy to protect the individual's right to be free from compelled self-incrimination.

*Id.* at 293-94; *see also In re H.V.*, 179 S.W.3d 746, 764 (Tex. App. 2005), *aff'd in part*, *rev'd in part*, 252 S.W.3d 319 (Tex. 2008).

At the time this Court decided *Baker*, the Court did not have the benefit of the later decisions interpreting *Edwards*, which focus on the inherently coercive nature of a *Miranda-Edwards* violation. *Compare Baker*, 956 S.W.2d at 23 ("The failure to scrupulously honor a suspect's invocation of his right to remain silent by continuing questioning is not necessarily coercive."), *with Maryland v. Shatzer*, 559 U.S. 98, 105 (2010). And, the Court did not have the benefit of *Patane* or the later decision by the New York District Court in *Gilkeson* distinguishing *Patane*. Nor did the Court have examples of the abuse that is occurring of the right to counsel in Texas, as demonstrated by the facts in *In re H.V.*, where a minor's right to counsel was violated. While *Edwards* has been called a prophylactic requirement, *Maryland,*

559 U.S. at 105, for purposes of the exclusionary rule, it should be treated differently where the arrestee has invoked his right to counsel and that request has been ignored. The fact is that absent the deterrent provided by an exclusionary rule, there is no incentive for police to honor requests for counsel. The "Fifth Amendment" right to counsel, therefore, means nothing.

While this Court must consider stare decisis when deciding whether to overrule precedent, "[p]recedent can be overruled, however, if the reasons for doing so are weighty enough." *Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex. Crim. App. 2007). "Some factors supporting the overruling of precedent are: (1) that the original rule or decision was flawed from the outset, (2) that the rule's application produces inconsistent results, (3) that the rule conflicts with other precedent, especially when the other precedent is newer and more soundly reasoned, (4) that the rule regularly produces results that are unjust, that are unanticipated by the principle underlying the rule, or that place unnecessary burdens on the system, and (5) that the reasons that support the rule have been undercut with the passage of time." *Id.*

Here, Appellant believes that the rule announced in *Baker* creates results that are unjust, conflicts with other newer precedent that is more soundly reasoned, and the reasons that supported the decision have been undercut with the passage of

11

time. For all these reasons, Appellant requests that the Court overrule *Baker*, adopt the reasoning in *Gilkeson*, and distinguish *Pantane*.

## CONCLUSION AND PRAYER

This Court should grant review, request additional briefing, and render the judgment that the court of appeals should have rendered. The Court should reverse the judgment of the lower courts and remand for further proceedings. Alternatively, the Court should remand to the court of appeals to consider the arguments presented, but not addressed, below.

Respectfully submitted,

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss
State Bar No. 24037046
SMITH LAW GROUP LLLP
820 E. Hackberry Ave.
McAllen, TX 78501
(956) 683-6330
(956) 225-0406 (fax)
brandy@appealsplus.com
*Counsel for Appellant*

12

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e)

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), because it contains 3,025 words, excluding the parts exempted by Rule 9.4.

<u>/s/ Brandy Wingate Voss</u>
Brandy Wingate Voss

## <u>CERTIFICATE OF SERVICE</u>

On December 23, 2015, in compliance with Texas Rule of Appellate Procedure 9.5, I served a copy of this document upon all other parties to the trial court's judgment and the respondent by first-class United States mail, return receipt requested, properly posted and deliverable as follows:

Glen Devino
*Assistant District Attorney*
Appeals Section
Office of Criminal District Attorney
Hidalgo County, Texas
100 N. Closner, Rm 303
Edinburg, Texas 78539
Fax: (956) 380-0407
glenn.devino@da.co.hidalgo.tx.us


Lisa C. McMinn
*State Prosecuting Attorney*
Office of State Prosecuting Attorney of Texas
P. O. Box 13046
Austin, Texas 78711-3046
Fax: (512) 463-5724

<u>/s/ Brandy Wingate Voss</u>
Brandy Wingate Voss

# APPENDIX

2015 WL 5602278
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH. TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Corpus Christi-Edinburg.

Roel Alvalrez Lopez, Appellant,
v.
The State of Texas, Appellee.

NUMBER 13–13–00307–CR    |
Delivered and filed June 25, 2015

On appeal from the 206th District Court of Hidalgo County,
Texas.

**Attorneys and Law Firms**

Ricardo P. Rodriguez, Glenn W. Devino, for the State of
Texas.

Brandy Wingate Voss, for Roel Alvarez Lopez.

Before Chief Justice Valdez and Justices Rodriguez and
Longoria

**MEMORANDUM OPINION**

Memorandum Opinion by Chief Justice Valdez

 **\*1**  A jury found appellant Roel Alvarez Lopez ("Lopez")
guilty of the offense of murder, a first degree felony,
and sentenced him to thirty-seven years' imprisonment in
the Texas Department of Criminal Justice—Institutional
Division. See Tex. Penal Code Ann. § 19.02 (West, Westlaw
through 2015 3d R.S.). By two issues, Lopez contends that
(1) the trial court erred in failing to suppress evidence that
he claims constituted the fruit of statements that he made
during an allegedly illegal police interrogation, and (2) he was
deprived of effective assistance of counsel. We affirm.

**I. Background**

Cecilia Escamilla found her brother, the decedent, dead at
home on the evening of Sunday, December 4, 2011. The San
Juan Police Department opened an investigation into his death
that night. The next day, an anonymous tipster gave the police
the name of "Roli Lopez who lived in Alamo." Lopez became
the focus of their investigation.

On the morning of Wednesday, December 7, 2011, the
police went to Lopez's home and informed him about their
investigation. After a brief exchange, the police handcuffed
and transported Lopez to the police station for further
questioning. According to Lopez and his mother, as the police
escorted him away, he asked his mother to call his lawyer.
The police officers denied hearing this request. Shortly after
the police brought him into custody, Lopez's mother retained
two attorneys to assist him.

When Lopez arrived at the police station on Wednesday
morning, officers questioned him concerning his whereabouts
on the previous Sunday. The initial interview was not
recorded. However, according to the police, Lopez signed
a written waiver of his *Miranda* rights. Lopez did not
recall signing this waiver and claimed that he requested an
attorney. According to the police, during this unrecorded
interview, Lopez identified three individuals that could
account for his whereabouts on Sunday: Jennifer Gonzales,
Danny Anguiano, and Joel Gonzalez.

Approximately two hours into questioning, but still during
Wednesday morning, the police obtained access to a video
camera and began recording the interview. Lopez appeared
in handcuffs. The police did not read Lopez his *Miranda*
rights at the start of the video. The police offered Lopez a
bottle of water and gave him an opportunity to take a cigarette
break. The police also indicated that they could arrange to
have Lopez's mother bring him some food if he was hungry,
but Lopez declined. Although Lopez had a splint on his
finger, he did not indicate the need for medical attention. The
interview continued for the remainder of the morning with
several breaks in questioning. At no point during the recorded
interview did Lopez request to speak to an attorney.

Throughout the recorded interview, Lopez consistently
denied any involvement in the decedent's death; he again
referenced Jennifer Gonzales, Danny Anguiano, and Joel
Gonzalez; and he offered an alibi that consisted of him
being at home during a certain time frame on the previous
Sunday. However, when Lopez's alibi did not match up with
information that his family members provided concerning

his whereabouts on Sunday, the police began to suspect that Lopez was not telling the truth. The police then asked Lopez whether it would be appropriate to charge his family members with filing a false report in light of the fact that the information they provided did not match up with his story. Despite what the police believed to be inconsistencies in his alibi, Lopez maintained his innocence throughout the interview.

**\*2** Over the next two days, Lopez remained in custody. The attorneys that Lopez's mother hired went to the police station to visit with Lopez on Thursday and Friday, but the authorities did not allow them access to Lopez. According to Lopez, during this time, the police put him in a cell with hostile individuals, refused his requests to see his attorneys, threatened to arrest his family, and did not feed him.

By Friday afternoon, Lopez informed the police that he wanted to confess. After Lopez indicated that he wanted to confess, the police fed him a plate of barbeque. After finishing his food, Lopez confessed that he shot the decedent with a gun. Lopez's confession was recorded and reduced to writing. Thereafter, Lopez was charged with capital murder.

After Lopez confessed, the police contacted Jennifer Gonzales, Danny Anguiano, and Joel Gonzalez—the three individuals who Lopez identified during his initial interview. After contacting these individuals, the police obtained additional incriminating evidence against Lopez, which, in relevant part, included the following: (1) their statements that tended to connect Lopez to the crime; (2) the murder weapon, which Lopez borrowed from Joel Gonzalez at a barbeque on the evening of the murder; and (3) several personal items belonging to the decedent and his family, which Lopez gave to Jennifer Gonzalez after the murder.

### A. Suppression Hearing

Prior to trial, Lopez moved to suppress his written and oral statements at the police department arguing the police interrogated him illegally. Specifically, Lopez argued that the police obtained his statements (1) by ignoring his request for counsel in violation of his *Miranda* rights, and (2) by using coercive tactics to get him to talk (and eventually confess) in violation of his due process right to be free from coercion under the Fourteenth Amendment. In addition to his statements, Lopez sought to suppress any statement that Jennifer Gonzales, Danny Anguiano, and Joel Gonzalez provided to the police, and any physical evidence that the police obtained through them.[1] Lopez argued that this

evidence was inadmissible under the fruit of the poisonous tree doctrine due to the allegedly illegal police interrogation.

1    At the suppression hearing, Lopez clarified that his motion to suppress sought to exclude the following evidence:

> What I'm asking the Court to suppress is the statements made by Joel [Gonzalez], whose identity came through what we classify as illegal questioning of Mr. Lopez. So they learn of Joel [Gonzalez], his statements and any physical evidence that was gathered as a result.
> Daniel Anguiano, which I think the State agrees that if Daniel Anguiano is inadmissible, then so are everybody else that was at that barbeque essentially because they learned of those people through Daniel Anguiano and they learned of Daniel Anguiano through Mr. Lopez.
> And Jennifer Gonzalez, who they also learned from Mr. Lopez. And then any subsequent physical evidence that they gathered through them.
> So it's just all evidence that stems from those individuals.

Midway through the suppression hearing, the State made an important announcement to the trial court; the State announced that it did not intend to introduce any statement that Lopez gave to the police.[2] The State explained that it elected not to introduce Lopez's statements out of a concern that the police had not complied with certain statutory requirements pursuant to Texas Code of Criminal Procedure article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2015 3d R.S.) (providing, as a prerequisite to admissibility, that the accused's statement capture the reading and waiver of his *Miranda* rights).

2    The excluded statements consisted of Lopez's videotaped interview on Wednesday and his written and videotaped confession on Friday.

**\*3** With the admissibility of Lopez's statements no longer at issue, the focus of the suppression hearing turned to the question of whether the fruit of the poisonous tree doctrine applied to exclude the statements of Jennifer Gonzales, Danny Anguiano, and Joel Gonzalez, and the physical evidence that the police obtained through them. The State argued:

> [T]hat evidence should not be suppressed because, what we're saying is that there were statutory requirements that were not met, which

would make the oral statements, the recordings inadmissible, which is an evidentiary rule. However, the exclusionary rule does not apply to this situation because there were no Constitutional violations that would allow the 'fruit of the poisonous tree' doctrine to apply to this situation. So the taint for the original oral statements made by the Defendant does not carry to the evidence that was obtained as a result of those statements.

Citing *Baker v. State,* the State clarified that the fruit of the poisonous tree doctrine did not apply unless there was actual police coercion. 956 S.W.2d 19, 23 (Tex.Crim. App.1997) (holding that "[i]n the absence of actual [police] coercion, the fruits of a statement taken in violation of *Miranda* need not be suppressed under the 'fruits' doctrine"). Lopez agreed with this articulation of the law but argued that the fruits of his statements should be suppressed because the police used coercion to get him to talk.

To resolve this issue, it appears that the trial court determined, and the parties agreed, that the focus of the suppression hearing should center on the circumstances surrounding Lopez's detention on his first day in custody when Lopez told the police about Joel Gonzalez, Daniel Anguiano, and Jennifer Gonzalez.

At the conclusion of the suppression hearing, the trial court orally (1) granted Lopez's motion to suppress as to his statements, and (2) denied his motion to suppress as to the fruits of his statements. The trial court did not enter findings of fact and conclusions of law for its ruling.

### II. Motion to Suppress

By his first issue, Lopez argues that suppression of his statements also required suppression of the fruits of his statements because the police violated (1) his *Miranda* right to counsel, and (2) his due process right to be free from police coercion.

#### A. Standard of Review
We review a trial court's decision on a motion to suppress for an abuse of discretion. *Crain v. State,* 315 S.W.3d

43, 48 (Tex.Crim.App.2010). In a motion to suppress hearing, the trial court is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). As such, the trial court may "believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id.* This is so because it is "the trial court that observes first hand the demeanor and appearance of a witness[.]" *Id.* On appeal, we should afford "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We should also afford the same amount of deference to the "trial court's rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.* Finally, we conduct a de novo review where "the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor." *Id.*

**\*4** When, as here, the trial court rules on a defendant's motion to suppress without entering findings of fact, we must view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Ross,* 32 S.W.3d at 855. The trial judge's decision will be sustained if it is correct on any theory of law applicable to the case. *Id.*

#### B. Applicable Law

##### i. Sources of Law
Lopez's first issue requires a review of three sources of law: (1) the *Miranda* rule; (2) the Texas confession statute; and (3) the right to be free from police coercion under the due process clause. First, the *Miranda* rule secures the Fifth Amendment right against self-incrimination in the context of custodial interrogations by requiring that a person subject to police questioning receive the following warnings: "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Second, the Texas confession statute implements the *Miranda* rule by requiring, among other things, that the accused's statement be either written or recorded and contain a reading of the

*Miranda* warnings, along with the accused's waiver thereof. TEX.CODE CRIM. PROC. ANN. art. 38.22.

Third, the due process clause of the Fourteenth Amendment requires that an accused's statement be voluntary and not the product of police coercion. *See Armstrong v. State,* 718 S.W.2d 686, 693 (Tex.Crim.App.1985). To determine whether the circumstances render an accused's statement coerced and involuntary, courts look at whether his will was "overborne" by police coercion. *Id.* Courts look to the totality of the circumstances surrounding the statement in making this determination. *Id.* (citing *Davis v. North Carolina,* 384 U.S. 737 (1966)). Relevant circumstances include the "length of detention, incommunicado or prolonged detention, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family member, and physical brutality." *Id.* When the issue is raised, the State must prove voluntariness by a preponderance of the evidence. *Juarez v. State,* 409 S.W.3d 156 (Tex.App.–Houston [1st Dist.] 2013 pet. ref'd).

### ii. Exclusionary Remedy

A statement taken in violation of any one of these three sources of law is inadmissible; however, only a violation of the third source of law—the due process right against police coercion—entitles the accused to suppression of the *fruits* of his statement. *See United States v. Patane,* 542 U.S. 630, 634–44 (2004) (plurality opinion); *Chavez v. Martinez,* 538 U.S. 760, 769 (2003); *see also Baker,* 956 S.W.2d at 22–24 (citing *Michigan v. Tucker,* 417 U.S. 433, 448–49 (1974)); *In re H.V.,* 252 S.W.3d 319, 329 (Tex.2008); *Contreras v. State,* 312 S.W.3d 566, 583 (Tex.Crim.App.2010); *State v. Cruz,* No. PD0082–14, 2015 WL 2236982, at *6 (Tex.Crim.App. May 13, 2015). "In determining whether evidence is inadmissible as fruit of the poisonous tree, the critical issue is whether the evidence was gained by exploitation of an illegality." *Graham v. State,* 964 S.W.2d 738, 741 (Tex.App.–Beaumont 1998) (citing *Wong Sun v. United States,* 371 U.S. 471 (1963)), *aff'd,* 994 S.W.2d 651 (Tex.Crim.App.1999).

### C. Analysis

### 1. *Miranda* Claim

**\*5** Lopez argues that the trial court erred in failing to suppress the fruits of his statements because the police violated his *Miranda* right to counsel. However, as noted above, the exclusionary remedy for a *Miranda* violation is limited to suppression of Lopez's statements—not the fruits

of his statements. See *Patane,* 542 U.S. at 634; *see also Baker,* 956 S.W.2d at 23–24; *In re H. V.,* 252 S.W.3d at 329; *Contreras,* 312 S.W.3d at 583. Thus, assuming without deciding that the police violated Lopez's *Miranda* rights, we cannot conclude that the trial court abused its discretion in following well-settled law by refusing to suppress the fruits of his statements. [3] *See Ross,* 32 S.W.3d at 855.

3      Lopez argues that the Texas exclusionary rule should apply to exclude physical evidence derived from *Miranda* violations because things have changed since the last time the court of criminal appeals took up the issue in *Baker v. State,* 956 S.W.2d 19, 23 (Tex.Crim.App.1997). Specifically, Lopez points out that in 2000, after the court of criminal appeals decided *Baker,* the Supreme Court in *Dickerson* abandoned its characterization of *Miranda* as a prophylactic rather than a constitutional rule. *See Dickerson v. United States,* 530 U.S. 428, 444 (2000) (concluding that *Miranda* announced a constitutional rule that Congress may not supersede legislatively). Lopez argues that *Dickerson's* characterization of *Miranda* as a constitutional rule calls for a reassessment of *Baker's* holding, which was premised on a view that *Miranda* announced a prophylactic rule. We disagree. Four years after *Dickerson* was decided, the Supreme Court in *Patane* clarified that *Dickerson* did not change the rule that physical evidence is admissible even if gained from questioning that violates *Miranda. See United States v. Patane,* 542 U.S. 630, 643 (2004) (plurality opinion). Furthermore, in 2008, the Texas Supreme Court echoed this holding in the context of a juvenile proceeding. *See In re H.V.,* 252 S.W.3d 319, 328 (Tex.2008) (holding that "violations of *Miranda* do not justify exclusion of physical evidence resulting therefrom"). Thus, in light of *Patane* and *In re H.V.,* and without binding authority to the contrary, we decline Lopez's invitation to reassess *Baker's* holding.

### 2. Police Coercion Claim

We now turn to Lopez's second argument that the trial court erred in failing to suppress the fruits of his statements because the police obtained them through coercion. Unlike his *Miranda* claim, this claim entitled Lopez to suppression of the fruits of his statements if there was "actual [police] coercion." *See Baker,* 956 S.W.2d at 23; *see also Armstrong,* 718 S.W.2d at 693. We afford almost total deference to the trial court's ruling on this issue because it involved a mixed question of law and fact, which turned on an evaluation of credibility and demeanor. *See Garcia v. State,* 15 S.W.3d 533, 535 (Tex.Crim.App.2000); *Guzman,* 955 S.W.2d at 89.

Because the trial court did not enter written findings of fact, we must view the evidence in the light most favorable to its ruling. See *Ross,* 32 S.W.3d at 855. We must also assume that the trial court made implicit findings of fact in support of its ruling as long as those findings are supported by the record. *Id.* Finally, we must affirm the trial court's ruling if it is correct on any theory of law applicable to the case. *Id.*

Guided by this standard of review, the record supports the trial court's implied finding that Lopez identified Jennifer Gonzales, Danny Anguiano, and Joel Gonzalez during his initial interview with the police, which took place on the morning of his first day in custody. Lopez does not argue that his will was overborne by police coercion during this initial interview. Instead, to establish police coercion, Lopez points to evidence—disputed by the State—that occurred after his initial interview. Specifically, Lopez argues that the police detained him for approximately three days, put him in a cell with hostile individuals, denied him access to his lawyers and family members, deprived him of food, and threated to arrest his family. [4] The State responds that these circumstances, even if true, are irrelevant because Lopez made the fruit-producing statements during his initial interview, and he does not argue that the police obtained those statements through coercion. We agree with the State.

4    We note that this evidence was not without dispute, as the trial court was faced with conflicting testimony from several witnesses at the suppression hearing regarding the deprivations Lopez claimed to have suffered.

**\*6** The critical issue for purposes of applying the fruits doctrine is whether the police obtained the fruits at issue by exploiting Lopez's right to be free from coercion—i.e., by exploiting an alleged illegality. *See Graham,* 964 S.W.2d at 741; *see also Wong Sun,* 371 U.S. at 471. With this in mind, the trial court could have reasonably determined that Lopez's will was not overborn by police coercion during his initial interview—i.e., the fruit-producing interview; therefore, the fruits doctrine did not apply to exclude the fruits of Lopez's statements because the police could not have obtained that evidence by exploiting an illegality. *Id.* Furthermore, Lopez provides no legal authority to support a contrary position. Viewing the evidence in the light most favorable to its ruling, we cannot conclude that the trial court erred in implicitly finding that Lopez's fruit-producing statements were voluntary and not the product of police coercion. *See Ross,* 32 S.W.3d at 855. We therefore overrule Lopez's first issue.

### III. Conclusion [5]

5    By his second issue, Lopez contends that, if his first issue was not preserved for appellate review, it was only because his trial counsel provided ineffective assistance by waiving the issue when he stated "no objection" as the State introduced the evidence that his motion to suppress unsuccessfully sought to exclude. Having already addressed the merits of Lopez's first issue, we have assumed, without deciding, that counsel's "no objection" statement did not waive his earlier-preserved claim. *See Thomas v. State,* 408 S.W.3d 877, 881 (Tex.Crim.App.2013) (indicating that if it is clear from the record as a whole that the defendant did not intend to waive an earlier-preserved claim of error, then the claim has not been waived and should be resolved on the merits). We do so being guided by Texas Rule of Appellate Procedure 47.1, which requires that we "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." *See* TEX.R.APP. 47.1.

We affirm the judgment of the trial court.

### All Citations

Not Reported in S.W.3d, 2015 WL 5602278

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.